NAOMI J. HARRISON

*Administratrix of the Estate of*

RAYMOND S. NEAL

*v.*

DR. JOSEPH P. SELTZER

(No. 14708)

Decided July 15, 1980.

*Burgess & Sloan, Leland T. Sloan and Bennett R. Burgess* for appellant.

*Steptoe & Johnson and Wilson Anderson* for appellee.

MILLER, JUSTICE:

This appeal from a summary judgment involves the question of whether the trial court correctly applied our "discovery rule," which permits a tolling of the usual statute of limitations period, in this medical malpractice case.

The appellant, Naomi J. Harrison, is the administratrix of the estate of Raymond S. Neal, the original plaintiff in this action, and was substituted as party plaintiff when Mr. Neal died. On September 10, 1976, in the Circuit Court of Kanawha County, Mr. Neal had instituted a malpractice action against the defendant, Dr. Joseph P. Seltzer, claiming that the doctor had improperly diagnosed a circulatory condition in his right leg and that as a result, his leg had to be amputated on December 26, 1974.

A plea of our two-year statute of limitations[1] was interposed by Dr. Seltzer on the basis that his last professional contact with the plaintiff had been September 3, 1974. Some discovery was undertaken by the parties prior to the summary judgment.

Dr. Seltzer's position, outlined in an affidavit, was that he had first seen the plaintiff on May 21, 1974, for treatment of an ulcer on his right foot. The doctor recommended that a skin graft be performed over the area of the ulcer, but advised the plaintiff that the operation might not be successful. Dr. Seltzer performed a skin graft operation on Mr. Neal in late June of 1974, and Mr. Neal was discharged from the hospital on July 9, 1974.

---

[1] W. Va. Code, 55-2-12.

Dr. Seltzer's affidavit also relates that he saw Mr. Neal on several follow-up appointments and the skin graft appeared to be healing in a satisfactory manner; that Mr. Neal did not keep an appointment with him in August; and that when he again saw Mr. Neal in his office on September 3, 1974, the skin graft had failed. The doctor at that time informed Mr. Neal that the skin graft had failed because of a circulatory problem in his legs and advised him to see another physician in regard to this condition. It was Dr. Seltzer's basic position that he did not undertake to treat Mr. Neal's underlying circulatory problem, but only its surface manifestation – the ulcer.

The plaintiff Neal's position was that Dr. Seltzer had not diagnosed or advised him of the serious nature of his circulatory problem. To support this contention, he introduced the deposition of Dr. Robert L. Leadbetter, a vascular surgeon, who first treated Mr. Neal on October 10, 1974. Dr. Leadbetter's diagnosis was that Mr. Neal suffered from a "far advanced occlusive disease" of the arteries in his leg – in lay terms, a severe blockage of the arteries.

It was Dr. Leadbetter's opinion that Dr. Seltzer had erroneously treated Neal's skin ulcer as if it were simply a surface manifestation of an insufficiency of blood flow in the veins rather than in the *profunda femoris*, the deep thigh artery. He questioned the medical soundness of skin grafting in the presence of an underlying blockage of blood flow resulting from advanced arterial insufficiency. Dr. Leadbetter stated that he would not have recommended a skin graft in this particular case, but would have proceeded with reconstructive surgery to attempt to alleviate the blockage of blood flow. Dr. Leadbetter also testified that the hazards of skin grafting in the presence of aggravated arterial blockage were well known in the medical profession.

The deposition of Dr. Leadbetter revealed that in November and December of 1974, he performed surgery on Mr. Neal's leg in order to attempt to correct the arterial

blockage, but that clotting and then gangrene occurred, and that on December 26, 1974, it was necessary that Mr. Neal's leg be amputated above the knee.

Based on these facts, the Circuit Court granted the motion for summary judgment on the statute of limitations.

In *Morgan v. Grace Hospital, Inc.*, 149 W.Va. 783, 144 S.E.2d 156 (1965), this Court first applied the discovery rule to a medical malpractice action. *Morgan* involved a patient who had a sponge left in her abdomen during an operation. In the ten-year interim she suffered pain and nervousness until another physician, through x-ray, discovered the presence of the sponge. In permitting her to maintain a suit, we adopted this statement:

> " 'Where a foreign object or substance is negligently left in a patient's body by an operating physician and surgeon, and the patient is in ignorance of the fact, the limitation period does not begin to run against a malpractice action until the patient learns, or in the exercise of reasonable care and diligence, should have learned of the presence of such foreign substance in his body.' " [149 W.Va. at 793, 144 S.E.2d at 162].

In *Hill v. Clarke*, 161 W.Va. 258, 241 S.E.2d 572 (1978), we considered another foreign object case where the claim was made that because the patient suffered considerable pain following an operation on her foot, she should have been made aware, in the exercise of reasonable care, that there was something wrong with her foot and should have sought medical advice. The record indicated her first consultation with a doctor was some four years after the operation. We concluded, in Syllabus Points 3 and 4:

> "Pain and the harmful effects of medical malpractice do not, by themselves, commence running of the statute of limitations."

> "The question of when plaintiff knows or in the exercise of reasonable diligence has reason to know of medical malpractice is for the jury."

*Hill's* requirement of a jury resolution of the issue of when the plaintiff knows or in the exercise of reasonable care has reason to know of medical malpractice can be traced to our earlier case of *Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967), where we stated in Syllabus Point 3:

> "In a medical malpractice case it is for the jury to determine from the evidence whether or not the physician fraudulently concealed from the plaintiff patient the condition of which he complains and, if so, whether the plaintiff learned of the same or by the exercise of reasonable diligence should have learned of it more than two years prior to the institution of the action."

It is true that *Hundley* spoke of the issue of fraudulent concealment. However, as we stated in *Hill, supra:*

> "The statute of limitations principle emphasized above applies to all factual questions under the "discovery rule" and not solely to cases where fraudulent concealment is at issue. Plaintiff's cause of action accrues when plaintiff knows or in the exercise of reasonable diligence has reason to know of the alleged malpractice, the question being one of fact. *See Ruth v. Dight*, 75 Wash.2d 660, 453 P.2d 631 (1969); *Christiansen v. Rees*, 20 Utah 2d 199, 436 P.2d 435 (1968). . . ." [241 S.E.2d at 573-74].

It was not intended by *Morgan* or *Hundley* to limit our discovery rule to only those cases involving a fraudulent concealment of the alleged malpractice. This was made clear in *Family Savings & Loan, Inc. v. Ciccarello*, 157 W.Va. 983, 993-94, 207 S.E.2d 157, 163 (1974), where we applied the discovery rule to a legal malpractice case, stating:

> "We adopt the 'discovery rule" in resolving the instant case, not on the theory of fraud but on the basis of the damages having occurred when the defect in title was discovered or by the exer-

cise of reasonable diligence should have been discovered. This then constitutes the time when the right to bring the action shall have accrued and the time when the statute of limitations begins to run ...."

Thus, it cannot be doubted that in malpractice, our discovery rule does not initially rest on a showing of fraudulent concealment, but rather on whether the injured plaintiff was aware of the malpractice or, by the exercise of reasonable care, should have discovered it. This is the general rule elsewhere. *E.g., Mayer v. Good Samaritan Hospital*, 14 Ariz. App. 248, 482 P.2d 497 (1971); *Stafford v. Shultz*, 42 Cal. 2d 767, 270 P.2d 1 (1954); *Yoshizaki v. Hilo Hospital*, 50 Hawaii 150, 433 P.2d 220 (1967); *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1969); *Lipsey v. Michael Reese Hospital*, 46 Ill.2d 32, 262 N.E.2d 450 (1970); *Springer v. Aetna Casualty and Surety Co.*, 169 So.2d 171 (La. App. 1964); *Acker v. Sorenson*, 183 Neb. 866, 165 N.W.2d 74 (1969); *Seitz v. Jones*, 370 P.2d 300 (Okla. 1961); *Frohs v. Greene*, 253 Ore. 1, 452 P.2d 564 (1969); *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968); *Ruth v. Dight*, 75 Wash.2d 660, 453 P.2d 631 (1969); *see also Johnson v. Podger*, 43 N.C. App. 20, 257 S.E.2d 684 (1979) (discovery rule expressly embodied in statute).

There are cases where the adverse results of medical treatment are so extraordinary that the patient is immediately aware that something went wrong, such that the statute of limitations will begin to run once the extraordinary result is known to the plaintiff even though he may not be aware of the precise act of malpractice. *Jordan v. United States*, 503 F.2d 620 (6th Cir. 1974) (patient underwent sinus operation and lost sight in eye); *Casias v. United States*, 532 F.2d 1339 (10th Cir. 1976) (patient suffered sciatic nerve damage from tonsillectomy, resulting in "dropped" foot); *Christ v. Lipsitz*, 99 Cal. App. 3d 894, 160 Cal. Rptr. 498 (1979) (wife became pregnant after husband's vasectomy); *Steel v. Aetna Life & Casualty*, 304 So.2d 861 (La. App. 1974) (pa-

tient underwent removal of cyst on back and was paralyzed in both legs after operation).[2]

These cases are, however, inapplicable to the present one, where there was no adverse extraordinary result while Mr. Neal was under Dr. Seltzer's care. The focal point of the claim of malpractice is not that the skin graft did not ultimately succeed, but rather that there was a failure to diagnose and treat the underlying circulatory blockage. *See Yoshizaki v. Hilo Hospital, supra; Renner v. Edwards, supra; Lipsey v. Michael Reese Hospital, supra; Acker v. Sorensen, supra; Frohs v. Greene, supra.*

Based on the facts that were available at the time of the motion for summary judgment, we do not believe that a judgment against the plaintiff was proper. The critical unresolved factual issue was whether Dr. Seltzer had informed the plaintiff of the severe underlying circulatory problem. Dr. Seltzer's affidavit does not directly address this issue. His peripheral assertions suggest that he was not aware of the severity of the underlying circulatory condition as he proceeded to perform the skin graft. The issue is a factual one and not susceptible to a summary judgment resolution in light of the disputed factual inferences. *E.g., Masinter v. Webco Co.,* ___ W. Va., ___, 262 S.E.2d 433 (1980); *Aetna Casualty & Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

---

[2] The United States Supreme Court in *United States v. Kubrick,* 444 U.S. 111, 62 L. Ed. 2d 259, 100 S.Ct. 352 (1979), has decided a somewhat analogous question under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), by holding that the cause of action accrues when the patient is aware of his injury and its probable cause, even though he may not be informed of exactly how the underlying treatment was improper. In *Kubrick,* a veteran was being treated for a leg infection with the drug neomycin and sustained a hearing loss as a side effect of the drug. He had been informed more than two years prior to the institution of the suit that the drug might have caused his hearing loss. He claimed that it was only within this two-year period that a doctor had characterized the use of the drug as malpractice. The Court held the suit to be barred because the patient was aware of the injury and its connection to the drug for more than two years prior to instituting the suit.

It should be stressed that while we reverse the summary judgment on the statute of limitations issue, we express no opinion on the ultimate issue of malpractice liability. The only point involved in this appeal is whether the plaintiff is precluded from suing by the two-year statute of limitations when he claims that he was not aware of the underlying malpractice – a misdiagnosis of his severe circulatory problem. His pretrial discovery demonstrates that there was a factual issue as to when he had notice of the severity of his circulatory condition. Whether Dr. Seltzer should have discovered the condition or whether the condition was correctable during the time Dr. Seltzer treated him are matters bearing on the substantive issue of malpractice liability, which we do not address. We only hold that summary judgment on the statute of limitations defense was not appropriate at this stage of the proceedings.

For the foregoing reasons, the summary judgment is reversed and the case is remanded for further proceedings.

*Reversed and remanded.*