KAREN SUE SCHULTZ RENNER, *et al.*

*v.*

REGA P. ASLI, M. D.

(No. 14449)

Decided July 14, 1981.

*William W. Merow, Jr., Monty L. Preiser* for appellants.

*O'Brien, Cassidy & Gallagher, Patrick S. Cassidy and Bradley H. Thompson* for appellee.

PER CURIAM:

This is an appeal from an order dismissing a medical malpractice action as time-barred by the statute of limitations. The trial court found that the plaintiff knew of the doctor's malpractice in diagnosing and treating her more than two years prior to instituting suit. Because the trial court impermissibly resolved a question of fact, we reverse the judgment of the trial court and remand the case for further proceedings.

On June 5, 1975, the plaintiff, Karen Sue Schultz Renner, sustained a work-related injury when she fell through a glass table cutting her arm above the right elbow. After emergency treatment in New Martinsville, West Virginia, she was referred to the Ohio Valley Medical Center in Wheeling, West Virginia, where she was seen by the defendant doctor, a neurosurgeon. She was hospitalized for two days and discharged on June 7, 1975, without receiving corrective surgery.

On July 7, 1975, the plaintiff was admitted to the West Virginia University Medical Center for examination, diagnosis and corrective treatment, and on July 9, 1975, she underwent surgery to repair the ulnar nerve which had been completely transected. The surgery was unsuccessful. On August 13, 1976, the plaintiff underwent surgery to remove a metal pin from her hand and on March 11, 1977, she underwent additional surgery for the removal of the fifth finger on her right hand.

On July 15, 1977, she instituted an action alleging that the defendant doctor negligently and carelessly diagnosed and mistreated her injury, requiring her to engage the services of another doctor for a proper diagnosis and corrective surgery. She also alleged she never regained the normal use and appearance of her right hand and had to have her fifth finger removed because of the careless and negligent acts of the defendant.

After taking the depositions of the plaintiff and her husband, the defendant moved to dismiss on the basis of

the statute of limitations. The trial court granted the motion based on the plaintiff's deposition, thus converting the ruling into a grant of summary judgment for the defendant. We turn then to the propriety of the grant of summary judgment.

The parties are not in disagreement as to the law governing this dispute. Generally, claims for personal injuries must be brought within two years after the cause of action accrues. *W.Va. Code*, 55-2-12. West Virginia follows the discovery rule in medical malpractice cases under which the cause of action does not accrue and the limitation period does not begin to run until the plaintiff knows, or in the exercise of reasonable diligence has reason to know, of the medical malpractice. The question of when the malpractice occurred and when plaintiff became aware of the negligence is a question of fact for the jury. We affirmed that rule recently holding "[t]he question of when plaintiff knows or in the exercise of reasonable diligence has reason to know of medical malpractice is for the jury." Syl. pt. 1, *Harrison v. Seltzer,* 165 W.Va. 366, 268 S.E.2d 312 (1980), *quoting,* Syl. pt. 4, *Hill v. Clarke,* 161, W.Va. 258, 241 S.E.2d 572 (1978).

The facts and inferences in the pleadings and depositions contained in the record considered in the most favorable light to the plaintiff (the non-moving party) did not warrant the grant of summary judgment. We do not believe that plaintiff's knowledge fo her condition from her own observation, and that acquired from her physicians, was sufficient to justify a determination, as a matter of law, that she knew of the defendant's negligence in his treatment of her more than two years before she instituted the action.

The critical fact in this case, which the depositions have not resolved, is when the plaintiff had reason to know of the malpractice. The chief issue of malpractice is whether or not Dr. Asli should have known that the ulnar nerve was severed and if he had known of this fact and operated there was any reasonable likelihood that the ultimate result of plaintiff's injury would have been less severe. Stating this last question somewhat differently, if the defendant doctor

had operated immediately, would this have prevented the subsequent claw-like hand and amputation of the plaintiff's finger.

There is no development of this factual issue, but instead the entire focus was on having the plaintiff state when she believed that something went wrong or "messed up." The fact that the plaintiff had an operation to attempt to rejoin the ulnar nerve is not conclusive that the defendant doctor was guilty of malpractice since the nerve was severed in the accident. The unanswered question is whether an immediate operation would have changed the outcome.

The question of malpractice in a diagnostic situation is often dependent upon when the plaintiff is informed by another physician that the original diagnosis was wrong and whether if a correct diagnosis had been made and treatment rendered the ultimate result would have changed. Here, the discovery emphasis was on when the plaintiff knew the ulnar nerve was transected, but having this knowledge does not bring a reasonable basis for medical malpractice into being unless the plaintiff had reason to know that an immediate operation would have restored the use of her arm and hand and saved the amputation of her finger. There is no conclusive factual basis on this point against the plaintiff. We addressed a similar point in *Harrison, supra,* where we stated:

> "There are cases where the adverse results of medical treatment are so extraordinary that the patient is immediately aware that something went wrong, such that the statute of limitations will begin to run once the extraordinary result is known to the plaintiff even though he may not be aware of the precise act of malpractice." 268 S.E.2d at 315.

Here, the adverse result was not the fact that plaintiff had to have an operation on her ulnar nerve as it appears this would have been necessary if the defendant doctor had correctly diagnosed the problem as a totally severed nerve instead of a partial severance. The central malpractice question was whether an earlier operation on the ulnar nerve would have prevented the plaintiff's subsequent

claw-like hand and loss of her fifth finger. Until plaintiff was informed that a prompt operation on the ulnar nerve would have prevented her claw-like hand and subsequent amputation of her fifth finger, she had not "discovered" the malpractice. There is no conclusive information on this fact in discovery material and consequently summary judgment was inappropriate. It is well-established in this jurisdiction that:

> "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Harrison v. Seltzer*, 165 W.Va. 366, 268 S.E.2d 312 (1980), *quoting*, Syl. pt. 3, Aetna *Casualty and Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

We do not mean to suggest by our decision that summary judgment is never proper in a medical malpractice case. We merely hold that summary judgment was not proper in this case in view of the evidence.

For the foregoing reasons, the summary judgment is reversed and the case is remanded for further proceedings.

*Reversed and remanded.*