John W. PAULEY and Oreda F. Pauley, Plaintiffs,

v.

COMBUSTION ENGINEERING, INC., a Delaware corporation; Johns-Manville Sales Corporation, a Delaware corporation, et al., Defendants.

Civ. A. No. 77–3277.

United States District Court, S. D. West Virginia, Huntington Division.

Oct. 29, 1981.

**760**

Menis F. Ketchum, Lawrence J. Tweel, Huntington, W. Va., Ronald L. Motley, Barnwell, S. C., for plaintiffs.

John F. Wood, Jr. and Roy D. Baker, Jr., Wood, Grimm & Delp, Huntington, W. Va., for Combustion Engineering, Inc., Owens-Corning Fiberglas Corp., Pittsburgh Corning Corp., Rock Wool Manufacturing Co., Certain-Teed Products Corp. and The Fiberglas Corp.

Robert L. Elkins and W. Henry Jernigan, Jr., Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., for Johns-Manville Sales Corp. and Johns-Manville Products Corp.

Fred Adkins, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., for Bell Asbestos Mines, Ltd. and Atlas Asbestos Co.

R. Kemp Morton, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., for Nicolet Industries.

George S. Sharp, Kay, Casto & Chaney, Charleston, W. Va., for H. K. Porter, Inc. and Standard Asbestos Manufacturing and Insulating Co.

Lee O. Fitch, Miller, Searl & Fitch, Portsmouth, Ohio, for Keene Corp. and Keene Building Products Corp.

R. G. McNeer, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W. Va., for Eagle-Picher Industries.

Robert M. Levy, Huntington, W. Va., for The Celotex Corp.

Norman K. Fenstermaker and James D. Lamp, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W. Va., for Unarco Industries, Inc.

George G. Guthrie and Charles S. Woody, Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., for GAF Corp.

Edward W. Eardley, Steptoe & Johnson, Charleston, W. Va., for Fibreboard Corp.

W. E. Mohler, Charleston, W. Va., for Owens-Illinois, Inc.

Fred L. Davis, Jr., Davis, Davis, Hall & Clovis, Parkersburg, W. Va., for Armstrong Cork Co.

Robert H. Sack, Benjamin, Faulkner, Tepe & Sack, Cincinnati, Ohio, for Forty-Eight Insulation, Inc.

## MEMORANDUM ORDER

STAKER, District Judge.

Pending before the court is the defendants' Motion to Dismiss based upon the grounds that the complaint filed herein is barred by the applicable statute of limitations. The plaintiff filed this action on November 3, 1977, seeking damages for injuries allegedly sustained as a result of his exposure to defendants' products containing asbestos.

Plaintiff worked as an insulator for Union Carbide Corporation from 1946 until June, 1976. Sometime prior to September 1973, he became concerned about his health and his difficulty in breathing and made arrangements to be examined by Dr. Buff on or about September 26, 1973. As a result of the examination, plaintiff filed a workmen's compensation claim. Plaintiff states in his deposition that he was informed by Dr. Buff that he was afflicted with "asbestos in the lungs;" and, accord-

ing to plaintiff's affidavit, he was informed by the doctor that he had "asbestos on the lungs" but that the doctor called the disease "occupational·pneumoconiosis and/or silicosis." Plaintiff further states in his affidavit that several physicians who examined him subsequent to Dr. Buff's examination did not mention "asbestos on the lungs" but did inform him that he was suffering from emphysema. In Dr. Buff's report of October, 1973, filed with the West Virginia Workmen's Compensation Fund, he diag-·nosed plaintiff as having pneumoconiosis and/or silicosis.

The Workmen's Compensation Commissioner's Order of April 11, 1977, granted compensation based upon occupational pneumoconiosis, but the Workmen's Compensation Appeal Board vacated and set aside the Commissioner's finding and held that plaintiff was not suffering from occupational pneumoconiosis. In August, 1978, the West Virginia Supreme Court of Appeals reversed the Appeal Board and reaffirmed the Workmen's Compensation Commissioner's findings of occupational pneumoconiosis.

■ Defendants contend, and the court so holds, that plaintiff's cause of action is based on personal injury, thereby making the two-year statute of limitations applicable in this case. Pursuant to West Virginia Code § 55–2–12, a claim for personal injury must be brought within two years after the action accrues. Defendants further contend that in an action for personal injury resulting from exposure to asbestos products, the action accrues either when the wrong is inflicted on the plaintiff, which is the time of last exposure to asbestos containing products, *Scott v. Rinehart & Dennis Co.*, 116 W.Va. 319, 180 S.E. 276 (1935), or when plaintiff knew, or by the exercise of reasonable diligence should have known, of his asbestos-related injury and its probable cause (hereinafter referred to as the "discovery rule"). *Harrison v. Seltzer*, 268 S.E.2d 312 (W.Va.1980); *Hill v. Clarke*, 241 S.E.2d 572 (W.Va.1978); *Morgan v. Grace Hospital, Inc.*, 149 W.Va. 783, 144 S.E.2d 156 (1965).

Plaintiff contends that the discovery rule, as adopted in *Morgan* and its progeny, is applicable but that the action does not accrue until the plaintiff knew, or by reasonable diligence should have known, of his asbestos-related injury and that the injury was a result of the improper conduct on the part of the defendants. Plaintiff terms this interpretation of the rule the "causal relation" discovery rule.

Defendants' contention that the time of last exposure is the time of accrual is based upon the· decision in *Scott, supra*, wherein the plaintiff brought an action against his former employer for damages which allegedly resulted from his inhalation of dust particles while employed by the defendant in the construction of a tunnel from April, 1930, until September, 1931. However, he did not ascertain that he had contracted silicosis while constructing the tunnel until three months before bringing his action in October, 1933. The West Virginia Supreme Court of Appeals held that the cause of action arose when the wrong was inflicted, and subsequent development of the disease resulting from the inflicted injury did not give rise to a cause of action, and in the absence of some act of concealment by the wrongdoer, the mere ignorance of the injured party of the actionable wrong would not suspend the statute. The court further held that plaintiff's action was barred by the statute of limitations since he did not bring his cause of action within one year of the time the injury was inflicted.

■ *Scott* has not been overruled by the West Virginia court nor has the West Virginia Legislature acted to change or abrogate the rule applied therein. Defendants contend that pursuant to the *Erie* Doctrine, this court must follow the West Virginia law as set forth in *Scott. See Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This court, however, is not immutably bound under *Erie* to follow state court decisions if it appears that the highest state court would not rely on such precedent. *C. R. Fedrick, Inc. v. Borg-Warner Corp.*, 552 F.2d 852 (9th Cir. 1977); *Hood v. Dun & Bradstreet, Inc.*, 486 F.2d 25

(5th Cir. 1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974). *Calvert v. Katy Taxi, Inc.*, 413 F.2d 841 (2d Cir. 1969); *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832 (2d Cir. 1967). As stated by the court in *Hood, supra* :

> [T]his court must determine whether there are compelling reasons why we should deviate from these early Georgia decisions. We recognize that federal courts are not immutably bound under *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to follow state court decisions where it appears that a state court considering the identical issue would not rely on such precedent. The federal court, like the state court, can consider all information and data that the highest court of the state could consider in determining whether to strictly adhere to a prior ruling.

486 F.2d at 31 (footnotes omitted).

The Court in *Calvert, supra*, in addressing this issue, stated:

> [D]ue to the continuing development of, and the ongoing changes in, today's concepts of legal liability, we, in determining the state law that we are to apply, cannot permit ourselves to be confined by state court decisional approaches if we have sound grounds to believe that the highest state court would in a case like ours adopt a different approach than the approaches in prior cases.

413 F.2d at 846.

It is, therefore, necessary for this court to determine if there are sound reasons to believe that the West Virginia Supreme Court of Appeals, at the present time, would follow the 1935 decision in *Scott*. In 1920, the court first adopted what is termed the "discovery rule" in *Petrelli v. West Virginia-Pittsburgh Coal Co.*, 86 W.Va. 607, 104 S.E. 103 (1920), wherein a cause of action concerning subterranean coal mining was held not to begin running until the time when the land owner discovered the trespass, or the time when discovery was reasonably possible. The wrongful act of the defendant was the alleged wrongful removal of coal by extending its subterranean mining operations into adjoining property belonging to the plaintiff. The court reasoned that the subterranean trespass was peculiarly susceptible to concealment to the injured party, and the trespasser's failure to disclose the trespass would prevent the injured party from bringing his action within the statutory period.

The court extended the use of the discovery rule in 1965 when it applied the rule to a medical malpractice action. *Morgan, supra*. Plaintiff sued the hospital for medical malpractice after discovering ten years later that a sponge had been left in plaintiff's abdomen during surgery at the defendant hospital. The court found the plaintiff's situation to be analogous and strikingly similar to the plaintiff's situation in *Petrelli* wherein the court found the wrongful act to be easily concealed from the plaintiff. As stated in *Morgan* :

> It simply places an undue strain upon common sense, reality, logic and simple justice to say that a cause of action had "accrued" to the plaintiff until the X-ray examination disclosed a foreign object within her abdomen and until she had reasonable basis for believing or reasonable means of ascertaining that the foreign object was within her abdomen as a consequence of the negligent performance of the hysterectomy.

144 S.E.2d at 161.

The discovery rule was, once again, applied in a medical malpractice suit in *Hill, supra*, wherein a foreign object was negligently left in plaintiff's body by a surgeon without the knowledge of the plaintiff. The court held that where a foreign object is left in the patient's body and the patient is ignorant of it and thus of his right of action for medical malpractice, the cause of action does not accrue until the patient knows, or in the exercise of reasonable diligence has reason to know, of the presence of the foreign object in his body.

The application of the discovery rule in medical malpractice cases was extended to include a cause of action against a doctor for allegedly improperly diagnosing a circu-

latory condition in plaintiff's right leg that resulted in the amputation of his leg. *Harrison, supra.* The issue before the court was whether plaintiff was barred by the two-year statute of limitations where he claimed that he was not aware of the underlying malpractice. The court held that it was a question of fact as to when plaintiff knew, or by the exercise of reasonable care, should have known of the misdiagnosis of his severe circulatory condition. *Id.* Harrison was followed in *Renner v. Asli,* 280 S.E.2d 240 (W.Va.1981), which also involved a medical malpractice action for negligence in diagnosing and treating plaintiff's injury. The court again applied the discovery rule.

In addition to applying the discovery rule in the areas of subterranean mining and medical malpractice cases, the West Virginia Supreme Court of Appeals has adopted the rule in a legal malpractice action seeking damages against an attorney who allegedly was negligent in certifying a real estate title as being good and marketable. *Family Savings & Loan, Inc. v. Ciccarello,* 157 W.Va. 983, 207 S.E.2d 157 (1974). The court adhered to the reasoning employed in *Morgan* :

> [W]e discern no valid reason why the principle expressed therein [in *Morgan* ] should not be extended when such extension is designed to promote justice and right. *Morgan* extended the rule to escape one which was "unrealistic and cruelly harsh." For the same reason we extend the *Morgan* rule to cover the instant case.

*Id.* 207 S.E.2d at 162.

The court went on to hold that the applicable statute of limitations does not commence to run against plaintiff's cause of action until he learns, or by the exercise of reasonable diligence should have learned, of the defect in the title. To hold otherwise, in the court's view, would be unjust and ought not to be the law.

The court's concern over the injustice of demanding that a plaintiff file his cause of action, in order to meet the time limitations, before he has had a reasonable oppor-tunity to know of his injury has been expressed in an action for workmen's compensation for injuries suffered due to exposure to asbestos products. *Roberts v. State Workmen's Compensation Commission & Union Carbide Corp.,* No. 15021, decided May 19, 1981. As stated by the court:

> [I]t would be fundamentally unfair to hold that a claim for O.P. benefits was barred before the disease manifested itself or before a reasonable person would have recognized the nature, seriousness and probable compensable character of the disease. Our research reveals that the great majority of the courts in this country have been sufficiently impressed with the acute unfairness of applying a workmen's compensation statute literally to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.

*Id.* at 4–5.

Although the issue confronting the court was whether to apply retroactively the amended state statute on statute of limitations in workmen's compensation cases, the rationale behind the courts' decision included the court's concern in asbestosis cases that plaintiff's cause of action should not be barred before he knows, or by reasonable diligence should know, that he has asbestosis.

There is little, if any, doubt that the highest court in West Virginia would not follow the rule in *Scott* if presented with the instant case. The basic purpose of a statute of limitations is to encourage promptness in instituting claims and to avoid inconvenience which may result from a delay in asserting claims when it is practicable for plaintiff to assert them. *Morgan, supra,* 144 S.E.2d at 161. Being mindful of the purpose, the court has continued to expand its adoption of the discovery rule in cases where the injury to the plaintiff is susceptible to concealment, through no fraudulent act on the part of the defendant, thus making it unreasonable, unfair and unjust to require the plaintiff to file his

cause of action before he can reasonably discover his injury. A cause of action for damages for an asbestos-related injury, an injury which often does not develop for at least fifteen or twenty years after exposure to asbestos products, is analogous to the plaintiff's actions in the aforementioned cases wherein the highest court adopted the discovery rule.

Whereupon, this court adopts the discovery rule for the purpose of determining when plaintiff's cause of action accrues. There still remains, however, the question of what scope to give the discovery rule. Defendants contend that the discovery takes place when the plaintiff knew, or by the exercise of reasonable diligence should have known, of his asbestos-related injury and its probable cause. Plaintiff contends that the scope of the discovery rule should be broader so as to include that time when plaintiff not only knew, or by the exercise of reasonable diligence should have known, of his asbestosis but also of the causal nexus between his injury and the acts of the defendants.

Although the present trend is to apply the discovery rule in products liability cases dealing with chemicals, drugs, and asbestosis, there still remains much confusion as to when discovery actually occurs. Under the rule, different courts have found discovery to occur at different times: (1) When the plaintiff knows, or by reasonable diligence should know, of his injury and that defendant has caused it; *Williams v. Borden, Inc.*, 637 F.2d 731 (10th Cir. 1981); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3rd Cir. 1976); (2) When the plaintiff knows, or by reasonable diligence should know, of his injury and that his injury was probably caused by wrongful acts of another; *Nolan v. Johns-Manville Asbestos & Magnesia*, 74 Ill.App.3d 778, 30 Ill.Dec. 307, 392 N.E.2d 1352 (1981); (3) When plaintiff knows, or by reasonable diligence should know, that he has asbestosis; *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir. 1973); and (4) When the disease manifests itself. *Karjala v. Johns-Manville Products Corp.*, 523 F.2d 155 (8th Cir. 1975); *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

The United States Supreme Court has refused to interpret the discovery rule to include discovery of a legal causation. In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the plaintiff brought an action against the government pursuant to the Federal Tort Claims Act for injuries allegedly suffered as a result of the negligent treatment received at a Veterans Administration hospital. The Court distinguished between plaintiff's ignorance of his legal rights and ignorance of his injury or its cause, stating that:

> We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

*Id.* at 123, 100 S.Ct. at 360 (footnote omitted).

The Court held that for purposes of the Federal Tort Claims Act's statute of limitations, the cause of action accrues when the plaintiff knows of both the existence and the cause of his injury, but the Court refused to hold that in addition to knowledge of his injury and its cause the plaintiff must also know that acts inflicting the injury might constitute negligent conduct by the defendant.

Given the West Virginia cases discussed heretofore wherein the court has applied the discovery rule, this court must determine what interpretation of the rule that West Virginia would adopt in the present case. The state court's decisions to extend the use of the discovery rule to determine when a cause of action accrues have focused on the question of what point in time it is realistic, fair and just to expect plaintiff to

discover the injury which has been inflicted upon him. There is, however, no indication that the court would extend the rationale to hold that plaintiff must also be allowed a reasonable opportunity to discover and establish a legal causation between his injury and the defendant's conduct. As stated by the Court in *Kubrick, supra,* such a position would undermine the purpose of the statute of limitations by allowing an injured person to be non-diligent in the pursuit of his cause of action.

Whereupon this court holds that the plaintiff's cause of action accrued when he knew, or by the exercise of reasonable diligence should have known, of the existence of his injury and its cause. This is a question of fact to be determined by the jury. *Renner, supra; Harrison, supra; Hill, supra.*

Defendants' motion was labeled a motion to dismiss but actually was brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. The raising of the statute of limitations as a bar to plaintiff's cause of action constitutes an affirmative defense and may be raised by motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, if the time bar is apparent on the face of the complaint. *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168 (3d Cir. 1978); 2A Moore's Federal Practice § 8.28, at 8–270 (2d ed. 1948). If, on a motion to dismiss based upon Rule 12(b)(6), matters outside the pleadings are presented to, and are not excluded by, the court, then the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. *Clark v. Volpe,* 481 F.2d 634 (4th Cir. 1973); *Plante v. Shivar,* 540 F.2d 1233 (4th Cir. 1976).

Upon the treatment of defendants' motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the court must look to see if there exists any genuine issue of material fact. Summary judgment is available only in those cases where it is not only perfectly clear that there exists no dispute as to the facts, but also where there is no dispute as to conclusions or inferences which may rea-

sonably be drawn therefrom. *Morrison v. Nissan Motor Co., Ltd.,* 601 F.2d 139 (4th Cir. 1979); *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.,* 381 F.2d 245 (4th Cir. 1967). The point in time when the plaintiff knew, or by the exercise of reasonable diligence should have known, of his injury and its cause is a question of fact to be answered by the jury. Therefore, defendants' motion for summary judgment is denied.