365 S.E.2d 57

**ALPINE PROPERTY OWNERS ASSOCIATION, INC.**

v.

**MOUNTAINTOP DEVELOPMENT COMPANY, et al.**

No. 17301.

Supreme Court of Appeals of West Virginia.

Dec. 8, 1987.

---

Herbert G. Underwood, William E. Galeota, Clarksburg, for Alpine Property.

Neil A. Reed, Kingwood, Arthur M. Recht, Wheeling, for Mountaintop Development.

McGRAW, Chief Justice:

This case is before this Court on an appeal from a summary judgment granted against the appellant, Alpine Property Owner's Association, Inc. (ALPOA), by the Circuit Court of Preston County on May 6, 1986. For the reasons detailed below, the circuit court's summary judgment order is affirmed in part, reversed in part, and this case is remanded for further proceedings consistent with this opinion.

## I.

Mountaintop Development Company, Inc. (Mountaintop) was incorporated on November 12, 1969 [1] and subsequently undertook the development and operation of what is now known as the Alpine Lake subdivision and resort near Terra Alta in Preston County.[2] In 1971, Mountaintop executed a declaration of restrictions wherein Mountaintop declared its intention to sell lots in the subdivision and to impose certain restrictions with respect to the sale of such lots, including the requirement that every person be approved for membership in ALPOA before acquiring title. ALPOA was incorporated as a nonstock, nonprofit corporation, with the general purpose of furthering and promoting the community welfare of property owners at the Alpine Lake subdivision.[3]

---

1. John W. Ruby, Hazel L. Ruby, and Mary E. Wolfe acted as Mountaintop's incorporators. George R. Farmer, Jr., acting as legal counsel, prepared the incorporation documents and thereafter served as general counsel to Mountaintop. Mountaintop originally issued one hundred shares of capital stock, all of which went to Morgantown Ordinance Works, Inc. In January of 1974, Morgantown Ordinance Works, Inc. transferred ownership of all of those shares to the estate of Mr. Ruby, who had died in August of 1972.

2. Mountaintop registered as a developer under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701–1720 (1982), and sold lots in the subdivision subject to the requirements of that Act.

3. Five officers of Mountaintop acted as ALPOA's incorporators.

Sometime in 1980 Mountaintop and AL-POA agreed that operation of Alpine Lake would be transferred from Mountaintop to ALPOA. At a meeting of the ALPOA board of directors on July 28, 1980, Mountaintop delivered documents transferring the subdivision's recreational facilities, streets, roads and other miscellaneous real estate, as well as various machinery and equipment used in the operation thereof, to ALPOA. In order to allow an orderly transition, complete operation of Alpine Lake was not transferred to ALPOA until the fall of 1980.

On December 9, 1980, Mountaintop's board of directors adopted a plan of complete liquidation and dissolution which was ratified by the executors of Mr. Ruby's estate, Mountaintop's sole shareholder. On January 2, 1981, Mountaintop's statement of intent to dissolve was delivered to and filed by the Secretary of State of West Virginia. On April 24, 1981, the final settlement of the estate of John W. Ruby was filed and the executors of the estate were discharged. On June 30, 1981, Mountaintop delivered articles of dissolution to the secretary of state, who thereupon issued a certificate of dissolution to Mountaintop. On July 9, 1981, Mountaintop recorded the articles of dissolution and the certificate of dissolution in the office of the Clerk of the County Commission of Monongalia County. On September 1, 1981, Mountaintop recorded a liquidating trust agreement which had been executed on December 30, 1980, by and between the executors, as the collective shareholder of Mountaintop, and Mr. Farmer, as the trustee of the liquidating trust.

On September 30, 1983, legal counsel for ALPOA directed a letter to the secretary of state advising him that ALPOA had outstanding claims against Mountaintop. On October 5, 1983, a deed was executed by and between the trustee of the Mountaintop liquidating trust and Ruby Enterprises, Inc., transferring all real estate owned by Mountaintop to Ruby Enterprises, Inc.[4] On October 6, 1983, more than two years after the certificate of dissolution was issued to and recorded by Mountaintop, AL-POA instituted suit against Mountaintop, the trustee of the Mountaintop liquidating trust, and the executors of the estate of John W. Ruby. On that same day, the trustee delivered a check in the amount of $219,712.59 to Ruby Enterprises, Inc. as a final distribution out of the Mountaintop liquidating trust. The circuit court later granted ALPOA's motion to amend and supplement its complaint and to join Ruby Enterprises, Inc. as an additional defendant.

## II.

Briefly, ALPOA claimed in its amended complaint that Mountaintop failed to complete the development of the Alpine Lake subdivision as promised,[5] and that Mountaintop sought to avoid its obligations to ALPOA and place its assets beyond AL-POA's claims. ALPOA's amended complaint alleged breach of contract, promissory estoppel, violation of West Virginia's corporate dissolution statutes, fraudulent conveyance, fraud and deceit, breach of fiduciary duty, and civil conspiracy.

The defendants moved to dismiss AL-POA's complaint under Rule 12(b) of the West Virginia Rules of Civil Procedure. Because matters outside of the pleadings were presented to the circuit court, the motions to dismiss were treated as ones for summary judgment and disposed of under Rule 56 of the West Virginia Rules of Civil Procedure. *West v. National Mines Corp.*, 168 W.Va. 578, 582, 285 S.E.2d 670, 674

---

4. Ruby Enterprises, Inc. was incorporated by the Rubys and Mary E. Wolfe in 1968. Mrs. Ruby became the sole stockholder when Mr. Ruby's estate was settled. The appellees claim that all assets remaining in the Mountaintop liquidating trust were transferred to Ruby Enterprises, Inc. in payment of loan obligations owed by Mountaintop to Ruby Enterprises, Inc.

5. ALPOA's claims are generally that Mountaintop represented to ALPOA and its members that the Alpine Lake development would include an eighteen-hole golf course, a central sewage collection and treatment facility, construction of an airstrip near or on the property, construction of four ski slopes, and various other improvements, none of which ALPOA contends were completed by Mountaintop.

(1981); *Chapman v. Kane Transfer Company, Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977); *Barker v. Traders Bank,* 152 W.Va. 774, 166 S.E.2d 331 (1969).

■ The circuit court rendered its opinion that ALPOA's complaint presented no genuine issue as to material fact and granted the defendants' motions for summary judgment. The court ruled that: (1) ALPOA's suit against Mountaintop was time barred, pursuant to West Virginia Code § 31-1-48 (1982 Replacement Vol.), because it was commenced more than two years after June 30, 1981,[6] the date the secretary of state issued a certificate of dissolution to Mountaintop;[7] (2) ALPOA's suit against Mr. Farmer, as trustee of the Mountaintop liquidating trust, was barred because his duties as trustee had terminated prior to institution of the suit; (3) ALPOA's suit against the executors of Mr. Ruby's estate was barred, pursuant to West Virginia Code § 44-2-26 (1982 Replacement Vol.), because suit was not instituted until after Ruby's estate was settled and the executors discharged; (4) ALPOA's suit against Ruby Enterprises, Inc. was invalid because it was dependent upon the existence of legally enforceable claims against Mountaintop and its liquidating trustee; and (5) ALPOA's civil conspiracy claim against the executors and the liquidating trustee was barred by the two-year limitation period applicable under West Virginia Code §§ 55-2-12 and 55-7-8a(a) (1981 Replacement Vol.).

Subsequent to the circuit court's summary judgment order, ALPOA was granted a stay of judgment pending appeal to this Court.

### III.

■ The question to be decided in reviewing a summary judgment order is whether a genuine issue as to any material fact exists.[8] As this Court said in Syllabus Point 4 of *Aetna Casualty and Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963): "If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact." In determining on review whether there is a genuine issue of material fact between the parties, this Court will construe the facts "in a light most favorable to the losing party," *Masinter v. Webco Co.,* 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980). Because summary judgment forecloses trial on the merits, this Court does not favor the use of summary judgment, especially in complex cases, where issues involving motive and intent are present, *Masinter,* 164 W.Va. at 243, 262 S.E.2d at 436, or where factual development is necessary to clarify application of the law. *Lengyel v. Lint,* 167 W.Va. 272, 281, 280 S.E.2d 66, 71 (1981).

As detailed below, this Court finds that certain factual issues were raised on the record in this case and that those issues should have been developed and resolved by a jury at trial.

### A. Mountaintop

The circuit court ruled that Mountaintop's corporate existence ended two years

---

6. The circuit court cited the wrong date, June 30, 1981 as the date of dissolution. The significant date, for purposes of the two-year limitation period, is the date the corporation records the certificate of dissolution. The certificate was recorded in this instance on July 9, 1981, but suit was not instituted until more than two years later.

7. The circuit court also ruled that ALPOA's claims that Mountaintop had engaged in activities prohibited by 15 U.S.C. § 1703 of the Interstate Land Sales Full Disclosure Act were barred by the three-year limitation period of 15 U.S.C. § 1711(a)(1), which provides that: "No action shall be maintained under section 1709 of this title with respect to—(1) a violation of subsec-

tion (a)(1) or (a)(2)(D) of section 1703 of this title more than three years after the date of signing of the contract of sale or lease." The circuit court grounded its ruling on Mountaintop's undisputed representation that no sales, leases, or offers to sell or lease subject to the Act were made after Mountaintop suspended its registration under the Act on August 12, 1980.

8. Rule 56(c) of the West Virginia Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

after the secretary of state issued a certificate of dissolution to Mountaintop, and that the secretary of state therefore lacked authority to accept service of process on behalf of Mountaintop.[9] In connection with its ruling, the circuit court concluded that Mountaintop's plan of dissolution and liquidating trust complied with the statutory dissolution requirements set forth in chapter thirty-one et seq. of the Code.

ALPOA first attacks the circuit court's ruling by contending that the certificate of dissolution issued by the secretary of state was invalid because Mountaintop's articles of dissolution were filed prematurely and included material misstatements of fact, in violation of West Virginia Code § 31–1–39 (1982 Replacement Vol.). ALPOA specifically contends that Mountaintop's distribution of assets to the liquidating trust did not comply with the statutory requirement that "adequate provision" be made for all corporate debts, liabilities, and obligations or the subsequent statutory "distribution" requirement.[10]

Mountaintop, on the other hand, asserts that the circuit court's summary judgment order was correct. Mountaintop denies ALPOA's claim that Mountaintop was not dissolved in accordance with West Virginia law, contending that it complied with all of the statutorily mandated filing requirements. Mountaintop argues that it complied with the statutory "adequate provision" and "distribution" requirements by distributing its assets to a liquidating trust for the benefit of its creditors and shareholders.

■ West Virginia Code §§ 31–1–127 to –129 (1982 Replacement Vol.) details the order and timing of actions to be taken by a corporation seeking to dissolve. After a plan of dissolution is adopted under West Virginia law, the dissolving corporation is required to execute and deliver to the secretary of state duplicate originals of a statement of intent to dissolve. Code § 31–1–127. Once the statement of intent to dissolve is filed, the corporation ceases its business activity, except as necessary for winding up its affairs. Code § 31–1–128. After a statement of intent to dissolve is delivered to and filed by the secretary of state, the dissolving corporation is required by law to immediately give written notice to each "known creditor" of the corporation, Code § 31–1–129(a), and to proceed to collect its assets, to pay or adequately provide for payment of its obligations, and to distribute all remaining assets to its shareholders. Code § 31–1–129(b).

When all debts have been paid or adequately provided for, and all remaining assets distributed to the corporations shareholders, the corporation is required to execute and deliver duplicate originals of articles of dissolution to the secretary of state, Code § 31–1–39(a), who thereupon files the articles of dissolution and issues a certificate of dissolution to the corporation. W.Va.Code § 31–1–40(a) (1982 Replacement Vol.). The corporation is dissolved upon recording the certificate of dissolution in the office of the clerk of the county commission in which the corporation's certificate of incorporation was recorded. Code § 31–1–40(c).

Pursuant to West Virginia Code § 31–1–48, an action for damages for claims exist-

9. ALPOA served process on the secretary of state on behalf of Mountaintop under the provisions of West Virginia Code § 31–1–15 (Supp. 1987), which constitutes the secretary of state as attorney-in-fact on behalf of corporations created under West Virginia law, with authority to accept service of process on behalf of such corporations.

10. Code § 31–1–39 mandates when articles of dissolution are filed and what the contents of the articles of dissolution must set forth. In the case of a business corporation, articles of dissolution must be executed and filed "when all debts, liabilities and obligations of the corpora-

tion have been paid and discharged, or adequate provison has been made therefor, and all of the remaining property and assets of the corporation have been distributed to the shareholders ..." W.Va.Code § 31–1–39(a). The articles of dissolution must state, inter alia, "[t]hat all debts, obligations and liabilities of the corporation have been paid and discharged or that adequate provision has been made therefor," W.Va.Code § 31–1–39(a)(2), and "[t]hat all the remaining property and assets of the corporation have been distributed among its shareholders in accordance with their respective rights and interests ..." W.Va.Code § 31–1–39(a)(3).

ing prior to dissolution may be brought against the corporation, if suit is brought within two years after the effective date of the dissolution and within any other applicable statute of limitations period. Here, ALPOA's suit for damages arose out of both parol and written contract claims regarding development of the Alpine Lake subdivision and resort. Unquestionably, ALPOA filed its suit well within the five-year and ten-year statute of limitations periods applicable to contract claims under West Virginia Code § 55-2-6 (1981 Replacement Vol.). The circuit court, however, based its summary judgment order primarily on the fact that more than two years had passed from the date the certificate of dissolution was issued to Mountaintop and the date ALPOA filed suit.

While it is true that late claims are barred by the two-year limitation period of West Virginia Code § 31-1-48, it is also true that, in order to have a regular, effective dissolution, the dissolving corporation must comply with all of the statutory conditions precedent. *See* 19 C.J.S. *Corporations* § 1644 (1940 and Supp.1987). Although this Court concludes that Mountaintop's use of a liquidating trust was permissible,[11] the record reveals that ALPOA was not given an appropriate opportunity to seek provision for its claims from the liquidating trustee. In fact, Mountaintop has not affirmatively shown on the record that it gave written notice to ALPOA immediately after filing of the statement of intent to dissolve, as required by West Virginia Code § 31-1-129(a). The record instead indicates that ALPOA was not notified of the dissolution until the liquidating trustee discussed the dissolution

at an ALPOA board meeting on March 28, 1982, and nothing in the record indicates that the statutorily required written notice was ever given.[12]

As a matter of law, the term "creditor" has been held to include "the owner of any right of action against another, whether a claim or legal right for damages arising out of contract or tort." *Coronet Mfg. Corp. v. May Furniture Co.*, 31 Ohio Misc. 131, 282 N.E.2d 588 (1971); *see also* 21 C.J.S. *Creditor* p. 1048 (1940). Here, ALPOA had a contract based claim for damages against Mountaintop prior to its dissolution. Therefore, ALPOA was a "known creditor" to whom Mountaintop was required to give written notice of the dissolution. In construing a similar dissolution notice requirement, a South Carolina court recently held: "Failure to strictly comply with the mandates of the dissolution statutes effectively continues the corporation with respect to creditors whose rights are prejudiced by noncompliance." *South Carolina Dept. of Social Services v. Winyah Nursing Homes, Inc.*, 282 S.C. 556, 562, 320 S.E.2d 464, 468 (Ct.App.1984); *see also, Bonsall v. Piggly Wiggly Helms, Inc.*, 275 S.C. 593, 274 S.E.2d 298 (1981); *Swager v. Couri*, 77 Ill.2d 173, 395 N.E.2d 921 (1979).

In this case ALPOA has been prejudiced by Mountaintop's failure to strictly comply with the written notice requirement because ALPOA was thereby unaware of the time limitations for filing suit. As a result of Mountaintop's failure to give written notice, Mountaintop's *de jure* corporate dissolution is void as to ALPOA, and ALPOA's claims are not barred by the two-year limitation period.[13] The

---

11. Use of a liquidating trust by a dissolving corporation is permissible and compatible with the two-year limitation period which exists after the certificate of dissolution is recorded, provided the trust's term extends over the two-year period, as it did in this case. The transfer of a corporation's assets to a trust for the benefit of its shareholders, and the payment of its known and contingent liabilities, is a distribution in complete liquidation. *See* 26 U.S.C. §§ 331(a)(1) and 337(a) (1982); Rev.Rul. 72-137, 1972-1 C.B. 101. Likewise, it is an acceptable and practical solution to the requirement that the dissolving corporation make "adequate

provision" for its obligations, W.Va.Code § 31-1-39(a)(2), and it provides a mechanism by which a "distribution" of any remaining assets may be made to the shareholders. W.Va.Code § 31-1-39(a)(3).

12. The pleadings reflect that ALPOA had, prior to this date, pointedly complained about the deficiencies in the subdivision to Mountaintop.

13. Both parties address the issue of whether there should be equitable tolling of the two-year limitation period in West Virginia Code § 31-1-

issues raised by ALPOA's complaint should not have been foreclosed from jury determination by summary judgment. ALPOA's complaint, based primarily on allegations of breach of contract and fraud and deceit, raises numerous questions of fact which should instead be tried by a jury.[14]

### B. Liquidating Trustee and Ruby Enterprises, Inc.

■ The circuit court's finding that the duties of the liquidating trustee had terminated is clearly wrong. The record reveals that on the same day ALPOA instituted its suit, October 6, 1983, the liquidating trustee was still carrying out his duties, making a final distribution of $219,712.59 to Ruby Enterprises, Inc. The record further reveals that the trust's term did not expire until October 8, 1983. Thus, the circuit court erred in ruling that ALPOA could not maintain its action against the liquidating trustee in his representative capacity.

■ There is no dispute that the liquidating trustee owed a fiduciary obligation to all creditors of Mountaintop. ALPOA maintains that the liquidating trustee breached that duty. Because a trustee is personally liable for breach of a fiduciary duty, 76 Am.Jur.2d *Trusts* § 304 (1975), a creditor like ALPOA may elect to hold the trustee personally accountable for damages resulting from the breach or he may elect to pursue the trust property by suing the trustee in his representative capacity. 76 Am.Jur.2d *Trusts* § 253. In an attempt to set aside the distributions made by the trustee to Ruby Enterprises, Inc. as fraudulant conveyances, we find that ALPOA has elected to proceed against the liquidating trustee in his representative capacity.

■ ALPOA claims that Mountaintop transferred its assets to Ruby Enterprises, Inc. with intent to delay, hinder or defraud ALPOA, and that Ruby Enterprises, Inc. accepted the transfers with notice of Mountaintop's fraudulent intent. Mountaintop and Ruby Enterprises, Inc. deny these contentions. Clearly, then, genuine issues of material fact concerning motive and intent exist with respect to the fraudulant conveyance portion of ALPOA's amended complaint. This Court concludes that the liquidating trustee is a necessary party to the fraudulent conveyance action insofar as it was the liquidating trustee who held legal title to the assets prior to conveyance,[15] *see Bankers Pocahontas Coal Co. v. Flanagan Coal Co.*, 100 W.Va. 707, 131 S.E. 545 (1921), and that the fraudulent conveyance action brought by ALPOA under former West Virginia Code § 40–1–1 (1982 Replacement Vol.) raises factual questions. Because these issues must also be tried by a jury, the circuit court's summary judgment in favor of the

48, alleging and denying misrepresentations by Mountaintop. Since the dissolution was not effective as to ALPOA, the two-year limitation period did not begin to run when the certificate of dissolution was recorded. Given our decision on this issue, this case does not turn on the question of whether the two-year limitation period is tolled. Accordingly, this Court need not decide whether Code § 31–1–48 is a survival statute, which is not subject to tolling, or a statute of limitations, which is subject to tolling. *See* Note, *Corporations—A Survey of the Pending West Virginia Corporation Act*, 77 W.Va.L.Rev. 50, 182 (1974).

14. The circuit court was correct in ruling that ALPOA's claim against Mountaintop under the Interstate Land Sales Full Disclosure Act was barred to the extent that ALPOA alleged violation of section 1703(a)(1) of the Act, involving sales and leases. However, the court erred in ruling that ALPOA's claim against Mountaintop under the Act was completely barred. Because ALPOA's complaint also alleged violation of sec-

tions 1703(a)(2)(B) and (C), involving fraud and deceit, the limitations period found under section 1711(a)(2) applied. That section provides for a limitation period three years after the discovery of the violation.

Whether more than three years had passed after ALPOA discovered or should have discovered Mountaintop's alleged fraud and deceit violations is a question of fact for jury determination, precluding summary judgment. *See* Syl. Pt. 1, *Harrison v. Seltzer*, 165 W.Va. 366, 268 S.E.2d 312 (1980); Syl. Pt. 4, *Hill v. Clarke*, 161 W.Va. 258, 241 S.E.2d 572 (1978).

15. ALPOA may not seek recovery of damages against the liquidating trustee personally, since it has elected to prosecute the action against him in his representative capacity, Syl. Pt. 5, *Massey v. Payne*, 109 W.Va. 529, 155 S.E. 658 (1930), and the record as a whole reveals that the action should be treated as a representative one. *Id.* at Syl. Pt. 2.

liquidating trustee and Ruby Enterprises, Inc. is hereby reversed.

### C. Executors of the Estate of Mountaintop's Sole Shareholder

The circuit court correctly ruled that the suit against the executors of the estate of Mountaintop's sole shareholder, in their representative capacities, is barred by West Virginia Code § 44–2–26, since suit was not brought until after the estate had been settled and the executors discharged. However, the true nature of the action against the executors was a personal one, which alleged fraud and deceit and civil conspiracy by the executors in voting to ratify Mountaintop's dissolution plan.[16] Nevertheless, as to the executors, the cause of action based on fraud and deceit is barred by the two-year limitation period of West Virginia Code §§ 55–2–12(a) and 55–7–8a(a), as explained in *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 593–94, 244 S.E.2d 321, 324–25 (1978). The only act alleged to have been undertaken by the executors in connection with Mountaintop's dissolution, voting the shares held by them in ratifying Mountaintop's dissolution plan,[17] occurred more than two years before suit was filed by ALPOA.

### IV.

Having reviewed the pleadings, answers to interrogatories, affidavits, and other matters of record, as well as the briefs and arguments of counsel, this Court reverses the circuit court's summary judgment order insofar as it precludes ALPOA's claims against Mountaintop, Mountaintop's liquidating trustee, and Ruby Enterprises, Inc. The circuit court's summary judgment order is affirmed, however, insofar as it relates to the complaint against the executors of the estate of John W. Ruby. Accordingly, this case is remanded for proper determination of the material factual issues between the parties.

**16.** The cause of action is one for fraud and deceit, since "[t]he cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." *Dixon v. American Industrial Leasing Co.*, 162 W.Va. 832, 834, 253 S.E.2d 150, 152 (1979).

Affirmed in part; reversed in part; remanded.

**17.** The executors voted the shares pursuant to West Virginia Code § 31–1–93 (1982 Replacement Vol.), which provides, in pertinent part, that an executor may vote shares held by him, without transfer of such shares into the executor's name.