829 F.2d 34
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James R. BOGGESS; Gene Wilson Thomas; Lonnie Hurley; June B.
Martin; Charles E. Farley; Harold Grant; John H.
Hein, Plaintiffs-Appellants,
James M. Adkins, Administrator of the Estate of Ralph E.
Adkins; Nyle C. Casto; Norma Casto, his wife; Wilford C.
Cavender; Freda Juanita Cavender, his wife; Homer K. Criner;
Lesta Criner, his wife; Estel Dailey; John W. Dailey; Carla
Jo Dailey, his wife; William Dailey; Margaret Dailey, his
wife; Narnie Grant; Ernest Franklin Harmon; Delma Harmon,
his wife; Emory Carl Harper; Alice Harper, his wife; Robert
E. Harris; Betty Harris, his wife; Dorothy V. Harrison,
Administratrix of the Estate of Wendell Harrison, deceased;
Letha W. Cunningham, Administratrix of the Estate of Cecil
Bland Cunningham, deceased; Phillip Keith Darby; Betty
Darby, his wife, Fannie Davis Woodall, Administratrix of the
Estate of William Davis, Jr., deceased; Martha Jane Doerr,
Administratrix of the Estate of Edward Lawrence Doerr,
Deceased; Arthur Lee Hudson; Jack Kenneth Kelly; Edna Nelson
King, Administratrix of the Estate of John David Nelson,
deceased; Lorine B. McClain, Administratrix of the Estate of
Carey Evan McClain, deceased; Alva H. Lane; Isanell G. Lane,
his wife, Harold Bertrand May; Bernice L. May, his wife;
James E. McClanahan; Nina M. McClanahan, his wife; Roy M.
O'dell; Opal V. O'dell, his wife; Helen L. Painter,
Administratrix of the Estate of Otis O. Painter, deceased;
Harry Evan Persinger, Administrator of the Estate of Otto
Thomas Persinger, deceased; Marcella V. Smith,
Administratrix of the Estate of John P. Smith, deceased;
James Robert Stricklan; Helen L. Stricklan, his wife; Robert
A. Stutler; Mary E. Stutler, his wife; Martha Thomas, wife
of Gene Wilson Thomas; Brady Luther Workman, Plaintiffs,
v.
MONSANTO COMPANY, a Delaware Corporation, Defendant-Appellee.
John H. HEIN, Plaintiff-Appellee,
v.
MONSANTO COMPANY, a Delaware Corporation, Defendant-Appellant.
John H. HEIN, Plaintiff-Appellee,
v.
MONSANTO COMPANY, a Delaware Corporation, Defendant-Appellant.
John H. HEIN, Plaintiff-Appellant,
v.
MONSANTO COMPANY, a Delaware Corporation, Defendant-Appellee.
 Nos. 86-3081, 86-3082, 86-3100 and 86-3101
 United States Court of Appeals, Fourth Circuit.
 Argued January 8, 1987.
Decided August 27, 1987.
 
 Gary L. Sasso (George H. Cohen; Natalie Wexler; Bredhoff & Kaiser; Stuart Calwell; Harvey D. Peyton; John Skaggs, Calwell, McCormick & Peyton, L.C., on brief), for appellants.
 Roger William Tompkins, II (Charles M. Love, III; Paul E. Frampton; Nicholas L. Divita; Bowles, McDavid, Graff & Love, on beief), for appellees.
 Before DONALD RUSSELL and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 The plaintiffs-appellants are seven former employees of Monsanto Corporation in its chemical plant at Nitro, West Virginia. With 169 other former or present employees, they filed actions in the district court seeking damages under West Virginia Code Sec. 23-4-2 (1981) alleging intentional infliction of harm by exposure to a dioxin, para-aminobiphynol (PAB), and other toxic chemicals. All of the actions were consolidated for pretrial discovery, and the cases of these seven plaintiffs were consolidated for trial.
 
 
 2
 After an eleven month trial, a jury found against all of the plaintiffs on their dioxin exposure claims, but brought in a verdict for the plaintiff, John Hein, on his claim of damages for cancer of the bladder concededly caused by his exposure to PAB. The plaintiffs appeal the judgments in favor of Monsanto on the dioxin claims, while Monsanto has brought a cross-appeal of the judgment in favor of Hein on his PAB claim.
 
 
 3
 The plaintiffs also seek to appeal from an award to Monsanto of costs amounting to $293,257.75.
 
 
 4
 We think the matter of costs is not properly before us. Otherwise, we affirm the judgment.
 
 I.
 
 5
 Ordinarily, workers suffering a job related injury in West Virginia are limited to a remedy under that state's Workmen's Compensation Act. Section 23-4-2 provides an exception, and preserves the common law right of action against an employer if the injury or death results 'from the deliberate intention of his employer to produce such injury or death.' W. Va. Code Sec. 23-4-2 (1981).
 
 
 6
 The West Virginia Supreme Court of Appeals has interpreted the statutory deliberate intention requirement to include willful, wanton and reckless misconduct, as well as an intentional tort as defined by the Restatement (Second) of Torts, Sec. 8A (1965). Mandolidis v. Elkins Industries, Inc., 246 S.E.2d 907, 924 & n. 9 (1978). The employee-plaintiff cannot prevail on such a claim upon proof of gross negligence, but he may prevail upon proof that the employer took the action 'with a knowledge and an appreciation of the high degree of risk of physical harm to another created thereby.' Mandolidis, 246 S.E.2d at 914.
 
 
 7
 Only 'serious' injuries are actionable, however, Marshall v. Sisters of the Pallotine Missionary Society, 703 F.2d 92, 94 (4th Cir. 1983); Smith v. ACF Industries, 687 F.2d 40, 43 (4th Cir. 1982), and the plaintiffs' chief contention goes to the district court's charge to the jury as to the seriousness element. The district court instructed the jury that serious harm and severe harm or grave harm are to be distinguished from transitory harm and from moderate harm, even though the moderate harm may last for a number of years.
 
 
 8
 We are inclined to agree with the plaintiffs that the court's instructions were too tight. A broken bone in a limb may be thought transitory, and substantial and lingering pain may be associated with moderate harm of long duration.
 
 
 9
 Nevertheless, any error in the charge was harmless, for, in answer to special interrogatories, the jury specifically found that all seven plaintiffs had suffered serious injury and the jury specifically listed the infirmities and found that they were serious.
 
 
 10
 In answer to other interrogatories, the jury specifically found that Monsanto had not acted willfully, wantonly or recklessly in exposing its employees to dioxin. In a consensus statement, the jury found that Monsanto had not acted diligently in seeking to determine the possible impact of exposure to dioxin on the health of its employees, but it had not acted willfully or recklessly.
 
 II.
 
 11
 In its appeal from the adverse judgment against it in favor of John Hein, Monsanto contends that its motion for judgment n.o.v., upon the ground of failure of proof, should have been granted.
 
 A.
 
 12
 Monsanto offered substantial evidence that, after it became known that PAB was a carcinogen, it did all that it could to protect its employees from its effects short of immediate discontinuation of its production. The record would have supported a verdict in Monsanto's favor. But against the defendant's proof, there was substantial circumstantial evidence which would support a finding of indifference despite some measures to reduce the hazard. We think a jury question was presented.
 
 B.
 
 13
 West Virginia Code Sec. 23-4-2 was amended in 1983 to impose a more exacting definition of deliberate intent, but permitting proof of that intent by proof of one of several elements, including proof that the unsafe condition was a violation of an applicable state or federal statute or regulation. W. Va. Code Sec. 23-4-2 (1985). Monsanto contends that Hein's cause of action did not arise until 1984, and that the amended statute should have been applied. No violation of any state or federal statute or regulation has been shown, and Monsanto contends that Hein's proof was insufficient to meet the more exacting definition of deliberate intent.
 
 
 14
 We think the district judge reasonably concluded that Hein's cause of action accrued in February 1983, so that the amended statute was inapplicable.
 
 
 15
 In February 1983, Hein had a urine cytology that was interpreted as positive for malignancy. Another such test made in May 1984 also showed the presence of abnormal cells. Cystoscopic examinations and biopsies did not disclose a cancer actually in place in the bladder until October 1984, however. It is uncontested that Hein's carcinoma, the presence of which was confirmed in 1984, was caused by his exposure to PAB.
 
 
 16
 In West Virginia, a cause of action for personal injury accrues when the plaintiff knew or should have known of his injury and its cause. Pauley v. Combustion Engineering, Inc., 528 F. Supp. 759, 765 (S.D. W. Va. 1981); Renner v. Asli, 280 Ciccarello, 207 S.E.2d 157, 162-63 (W. Va. 1974). The district court applied that rule here and held that Hein's cause of action accrued in February 1983, when he knew that there were cancerous cells in his urine.
 
 
 17
 Monsanto contends that there is no cause of action for latent carcinoma, and that Hein's cause of action accrued only when the actual presence of a tumor was confirmed in October 1984.
 
 
 18
 A physician testified that the urine cytology in February 1983 indicated that Hein had cancer of the genitourinary tract. At the time, he believed that the cancer was in Hein's bladder, and this belief was confirmed in 1984. It may be that every malignancy does not develop into a cancerous tumor, though it is known that this one did. Indeed, malignancy and carcinoma in situ are but different stages in the evolution of a cancerous tumor. The presence of the first stage was known before the amended statute became effective. On the basis of that knowledge, the physician was of the opinion in February 1983 that Hein had cancer.
 
 
 19
 Though the actual presence of a tumor in the bladder was not confirmed until later, we think the physician's testimony warranted the district court's conclusion that, in this case, Hein's cause of action accrued in February 1983 and that the amended statute was inapplicable.
 
 III.
 
 20
 The district court directed the taxation of costs against the plaintiffs in the amount of $304,996.87. Later,
 
 
 21
 The district court directed the taxation of costs against the plaintiffs in the amount of $304,996.87. Later, however, he stayed execution of the judgment pending appeal and reserved decision on questions that had been raised as to allocation of all of the costs between the 142 plaintiffs. This matter is not properly appealable since no final order respecting costs has been entered, and the allocation of those costs is an open question. It may not be amiss to observe, however, that it is beyond the power of the court to tax costs against those plaintiffs whose cases have never been tried. As to the costs incurred in the pretrial process, the district court, in its discretion, doubtless could tax each of these seven plaintiffs with only 1/142 of those costs. Costs incurred in connection with the trial can be taxed only against these seven plaintiffs, though the court, of course, has discretion to make these seven plaintiffs, in consideration of their personal and financial condition, responsible for less than all of the costs actually incurred. The taxation of costs in such an enormous amount may discourage the bringing of meritorious actions worthy of a full trial and disposition on the merits.
 
 IV.
 
 22
 We find no merit in the plaintiffs' complaint of the refusal to receive in evidence a chart prepared by their physician-expert. There were problems with the methodology used in preparing the chart, and its exclusion was clearly within the discretion of the trial court. DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512, 518 (4th Cir. 1985).
 
 
 23
 AFFIRMED.