## CHARLESTON.

HANNAH MASSEY, *Admx., etc. v.* W. D. PAYNE *et als.*

(No. 6739)

Submitted October 14, 1930. Decided October 21, 1930.

*Payne, Minor & Bouchelle,* and *Dillon, Mahan & Holt,* for plaintiffs in error.

*Love & Love,* for defendant in error.

HATCHER, JUDGE:

The plaintiff's decedent, French Massey, was electrocuted on the night of January 19, 1929, and in this action she recovered a judgment for damages therefor in the circuit court, against W. D. Payne and Virginia Payne, as Trustees, under the will of J. M. Payne, deceased. Massey's death occurred on a tract of 853 acres which had been leased and operated for coal by Boomer Coal & Coke Company prior to January 1, 1929, but which had reverted to the landlords on that date. In recognition of that reversion, the landlords appointed an agent who was in possession on and after the date last mentioned. Massey had been an employee and tenant of the Coal Company for many years and his continued tenancy was recognized by the landlords after they resumed possession. The 853 acres tract was owned jointly by W. D. Payne and Virginia Payne, Trustees, etc., (3/8), Nettie P. Dickinson (2/8), and Margaret H. Osenton (3/8). When the propetry reverted, the Coal Company sold to the landlords an electric system which had been used in connection with its plant. The landlords continued to operate the system. A cross arm on a pole carrying a wire with a high current of electricity had become rotten. During a storm on the night before the accident, the cross arm broke, the wire sagged upon a wire fence and charged it with electricity. The fence was on a hill opposite to and some 200 feet from the house occupied by Massey. About ten o'clock P. M. on the evening of the fatality, he went on the hill, for the avowed purpose of discovering what was causing a dog up there to bark, came in contact with the wire fence and was killed. The fence was some 15 or 20 feet from a path habitually used by the employees of the Coal Company for their own purposes. Proper inspection would seemingly have disclosed the defective condition of the cross arm.

"By the weight of authority a trust estate cannot be held liable for torts committed by the trustee. Ordinarily he can

be held liable only in his individual capacity, and he is personally liable to third persons for his torts either of misfeasance or of nonfeasance in failing to keep that trust property in repair, irrespective of his right to reimbursement.'' Perry on Trusts and Trustees (7th ed.) sec. 437a. In an article appearing in Vol. 22, Col. L. R. 527, 541, Harlan F. Stone, while a professor of the Columbia University Law College, stated that the above ''is an accepted doctrine wherever the question has arisen.'' An examination of the authorities confirms his statement. See *Shepard v. Creamer, Tr.*, 160 Mass. 496; *Bannigan v. Woodbury*, 158 Mich. 206, 133 Am. St. Rep. 371, (annotation p. 373); Annotations 7 A. L. R. 408 and 44 A. L. R. 640, respectively; Sears Tr. Est., sec. 40; 24 C. J., p. 741, sec. 1826; 26 R. C. L., p. 1319.

The theory of plaintiff's counsel, however, throughout this suit has been that because the trustees were taking an active part in the management of the property in January, 1929, the trust estate could be held liable for the alleged negligence which caused the death of Massey. In support of the theory they cite the annotation in 44 A. L. R. at 681, a sentence from sec. 178, page 1319, 26 R. C. L., and *Wright v. R. Co.*, 151 N. C. 529. Both the annotation and the sentence are based largely on the North Carolina case. In that case, the trustees were acting with the sanction of the beneficiaries and to a large extent under their supervision and control. That situation did not exist in this case, and no reason whatsoever appears to take this case out of the general rule.

In pursuance of the erroneous theory the defendants are described in the declaration ''as trustees under,'' etc. Such a description is the proper style to denote a representative capacity. Chitty on Pl., sec. 205. Under earlier authorities of which *Gilbert v. Hardwick*, 11 Ga. 599, 602, is a leading case, the description above would be held to be ''of substance'' and could not be regarded as immaterial. But under modern construction ''title and pleadings may be considered together to ascertain the true nature of the action, and it will be treated as an individual or representative one as disclosed upon an inspection of the whole record,'' 2 Woerner The Am. Law of Administration (3rd ed.), sec. 303; *Thurmond v. Coal Co.*, 85

W. Va. 501, 506. The allegations in the declaration do not make a case against defendants in their representative capacity; but the substance and effect of the allegations is to charge them personally. Consequently, the *true nature* of this action is an individual one. Therefore, the words "as trustees," etc., may be regarded as merely *discriptio personae* and surplusage. *Shepard v. Cramer, Tr., supra; Bannigan v. Woodbury, supra; Belvin's Ex'rs. v. French*, 84 Va. 81, 83; 24 C. J., 825; *Hanson v. Blake, Admr.*, 63 W. Va. 560.

The defendants filed a plea in abatement setting up that Nettie P. Dickinson and Margaret H. Osenton were jointly interested in the ownership and operation of the electric system and should also have been made parties to the action. A demurrer to the plea was correctly sustained. This being a tort action, it was optional with the plaintiff as to which of the joint tortfeasors she would sue. See authorities cited in *Pence v. Bryant*, 73 W. Va. 126, 128-9.

Over the protest of the defendants the court continued the hearing on the plea until after the trial on the merits. This was plainly wrong, as Code, chapter 125, section 21, explicitly provides that such a plea shall be disposed of before trial on a plea in bar. As the plea was insufficient on its face and the demurrer thereto (made when it was presented) should have been sustained, we are not inclined to reverse merely because the hearing on the plea was not timely.

The defendants contend that the decedent was a trespasser at the place where he was killed. But as the Coal Company had knowingly permitted its tenants to use the hillside for gardening and to roam there at will, and no restrictions had been put on such use by the owners after the land reverted, he was clearly not a trespasser.

The defendants raise the point that their agent was in full charge of and had complete control over the property and that the negligence complained of was his personal misfeasance, for which he alone is responsible. Some cases seem to support that contention; but, if I understand them correctly, they are cases in which it was shown that the agent had exclusive control of the property with the duty and the power to make all repairs, and that the injury complained of was caused by a condition

for which he was directly responsible. See Mechem on Agency, (2nd ed.), sec. 1474. Without committing ourselves on the soundness of those decisions, suffice it to say that the only evidence of the agent's authority in this case is a letter directing him ''to take full possession with full power to receive all rents'' and make proper division of the same. The authority proven is not comprehensive enough to sustain the defendants' point.

We are aware of authority for the proposition that if the record clearly shows that the real issue was in fact fairly tried, though upon a wrong legal theory, and that ''no other evidence or different testimony would or could have been produced by either party, a reversal will be denied.'' 2 R. C. L., p. 183-4, sec. 156. It appears, however, that W. D. Payne, in person, was at one time a party defendant to this action, and he (as well as other personal defendants) was dismissed in that capacity on motion of the plaintiff. It also appears that the issue was made up with the defendants ''as trustees'' and that the case was prosecuted and the judgment taken against them as such. It would be anomalous indeed, to hold that W. D. Payne remained in the case *in personam* and is liable personally after being dismissed personally. The real issue was the issue between plaintiff and the defendants as individuals. It would again be anomalous to say that the personal issue was tried when the issue the jury was sworn to try was the representative one. The defendants as trustees were not liable for a tort, and they were fully cognizant of their legal position from the start. They were entitled to stand on their legal rights, and breached no legal duty in refraining from a personal defense after the plaintiff (under the sanction of the trial court) had expressly refused to proceed against them personally. Under this situation, how can we say that no other evidence or different testimony would have been produced or defense made had the suit been specifically prosecuted against the defendants as individuals? Are we to imagine certain personal defenses at law and in fact which the defendants might have set up? And then are we to push such defenses over as straw men without giving the defendants an opportunity to be heard thereon? In the face of the persistent and exclusive

treatment of the defendants as representatives by the plaintiff and the circuit court throughout the actual trial of this case— "from the whole picture of the case," as my brother, MAX-WELL, would say—we cannot hold that the defendants have had their day in court, as individuals.

The judgment below cannot be upheld either as a representative or a personal one, and will be reversed, and a new trial granted the defendants.

*Judgment reversed; new trial awarded.*