IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-0724

_____

FILED

**June 1, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ROBERT PAUL JACKSON, and THE
JOELYNN FAMILY PRESERVATION TRUST,
Petitioners

v.

PAMELA S. BROWN, as Administratrix of
the Estate of Harry Edward Myer, Jr.,
Respondent

_____

Appeal from the Circuit Court of Ritchie County
The Honorable Timothy L. Sweeney, Judge
Civil Action No. 14-C-36

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED WITH
DIRECTIONS

_____

Submitted: May 23, 2017
Filed: June 1, 2017

David A. Mohler, Esq.                    Rodney C. Windom., Esq.
Joshua A. Johnson, Esq.                  Scott A. Windom, Esq.
Bowles Rice LLP                          Windom Law Offices PLLC
Charleston, West Virginia                Harrisville, West Virginia
Counsel for Petitioners                  Counsel for Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      West Virginia Code § 44D-10-1010(c) [2011], contained in the West Virginia Uniform Trust Act, provides that a claim based on a tort committed by a trustee in the course of administering a trust may be asserted in a judicial proceeding against the trustee in the trustee's fiduciary capacity, whether or not the trustee is personally liable for the claim.

2.      To the extent this Court's prior rulings in *Massey v. Payne*, 109 W.Va. 529, 155 S.E. 658 (1930), and *Marion v. Chandler*, 139 W.Va. 596, 81 S.E.2d 89 (1954), conflict with W.Va. Code §§ 44D-10-1010(b) and (c) [2011], those cases are overruled.

Justice Ketchum:

The defendants below, Robert Paul Jackson ("Defendant Jackson") and the Joelynn Family Preservation Trust ("the Trust"), appeal from the July 6, 2016, order of the Circuit Court of Ritchie County denying their motion for a new trial following a jury verdict of $543,202.17 in favor of Plaintiff Pamela S. Brown ("plaintiff") in a wrongful death action arising from an automobile accident. On appeal, Defendant Jackson asserts that the circuit court erred by: 1) granting summary judgment to the plaintiff on the issue of Defendant Jackson's liability for causing the automobile accident; 2) denying his post-trial motion for judgment as a matter of law[1] on the issue of whether the Trust was liable for Defendant Jackson's tort; and 3) incorrectly awarding prejudgment interest on an award for lost wages.

After review, we affirm the circuit court's summary judgment ruling on the issue of Defendant Jackson's liability. However, we reverse the circuit court's denial of

---

[1] Defendant Jackson filed this motion as a "motion for judgment notwithstanding the verdict." However, pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* this motion is properly labeled as a motion for "judgment as a matter of law." As this Court noted in *Fredeking v. Tyler*, 224 W.Va. 1, 4, 680 S.E.2d 16, 19 (2009):

> Prior to the amendment of Rule 50 in April 1998, a post-trial motion for judgment as a matter of law was called a "motion for judgment notwithstanding the verdict" or "motion for judgment non obstante veredicto," and we note that these vestigial terms continue to occasionally litter both this Court's opinions and the arguments of attorneys.

1

Defendant Jackson's post-trial motion for judgment as a matter of law on the issue of the Trust's liability. Our review reveals that Defendant Jackson was not "in the course of administering" the Trust when the automobile accident occurred. Therefore, under W.Va. Code § 44D-10-1010(c) [2011], contained in the West Virginia Uniform Trust Code, the Trust is not liable for Defendant Jackson's tort. Finally, we affirm the circuit court's award of prejudgment interest on the plaintiff's lost wages damage award.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

On the morning of June 7, 2014, Defendant Jackson drove a 1999 Ford F-350 flat-bed truck[2] to a restaurant in Ritchie County, West Virginia, where he ate breakfast. Following breakfast, Defendant Jackson went to an Ace Hardware Store in Ritchie County where he purchased "six or seven joints of plastic pipe" that he was planning to install "in the ground as a French drain to get water away (from the residence that he lived in)." After loading the plastic pipes into his truck, Defendant Jackson drove a short distance before coming to a stop at the intersection of Ritchie Industrial Park Road and U.S. Route 50.

---

[2] This Ford truck was owned by Venture Petroleum. Defendant Jackson testified, "I got an oil company [Venture Petroleum], small one. . . . And [the Ford Truck] was always in Venture Petroleum." Venture Petroleum is not a named defendant in this case. For ease of the reader, we generally refer to the Ford truck as "Defendant Jackson's truck."

2

U.S. Route 50 is a four-lane divided highway. Defendant Jackson's truck was perpendicular to Route 50 as he was stopped at the intersection. His plan was to drive straight across the two eastbound lanes and make a left turn to merge into the westbound lanes of Route 50. Defendant Jackson testified that before attempting to drive his truck across the eastbound lanes of Route 50, he looked to his left and noticed a semi-truck coming toward him. Believing that he had enough time to clear the two eastbound lanes in front of the semi-truck, Defendant Jackson proceeded into the eastbound lanes of the highway. However, Defendant Jackson did not see a motorcycle that was also traveling eastbound on Route 50 that was being driven by the decedent, Harry Myer, Jr. ("Decedent Myer").[3]

Decedent Myer was traveling in the right or slow eastbound lane of Route 50 when Defendant Jackson's truck entered the highway. Though Decedent Myer applied his brakes, as evidenced by skid marks in the slow lane of Route 50, he crashed his motorcycle into the left rear quarter panel of Defendant Jackson's truck. The

---

[3] Defendant Jackson was asked during his deposition if he saw the motorcycle when he started across the intersection, he stated: "No. I never seen a motorcycle until I got past the tractor-trailer." Defendant Jackson then testified that he saw the motorcycle in his "peripheral vision" just before the collision occurred. He explained, "[I]t wasn't like I turned and looked at it [the motorcycle]. I mean, I could see it, and I was just getting out [sic] the way, and I didn't dwell on how it is, but I knew that – I knew it had – I knew I had to get out of the way, and I was afraid he was in trouble. And I was afraid that I wasn't going to get out far enough, and I didn't. I lacked a foot-and-a-half of getting away."

3

collision occurred in the right or slow eastbound lane. Decedent Myer was injured and later died at the scene of the accident as a result of the injuries he suffered in the crash.

Following the crash, the West Virginia State Police conducted an investigation. A West Virginia State Policeman, Corporal J.L. Brewer, completed a "Uniform Traffic Crash Report" in which he determined that Defendant Jackson "failed to yield the right of way" at the intersection in violation of W.Va. Code § 17C-9-1. Corporal Brewer's report provided that the crash occurred in the right eastbound lane of Route 50 near the hash marks that divide the slow and fast lanes. Further, the report concluded that Decedent Myer did not commit any traffic violations. The complete narrative description contained in the report describing the accident is as follows:

> [Decedent Myer's motorcycle] was traveling east bound on U.S. Route 50. [Defendant Jackson's truck] was coming from Ace Hardware and sitting at the intersection of Ritchie County Industrial Park Road and U.S. Route 50. As [Decedent Myer's motorcycle] was approaching the Ritchie County Industrial Park Road intersection, [Defendant Jackson] pulled [his truck] onto U.S. Route 50 causing [Decedent Myer's motorcycle] to collide into the left rear quarter panel of [Defendant Jackson's truck]. [Decedent Myer's] motorcycle collided with [Defendant Jackson's truck] in the east bound driving lane of U.S. Route 50 near the passing hash marks.
>
> [Decedent Myer] applied [the motorcycle's] brakes approximately 89 feet before colliding with [Defendant Jackson's truck].

The plaintiff, Pamela Brown, as Administratrix of Decedent Myer's estate, filed a wrongful death action against Defendant Jackson in September of 2014. During Defendant Jackson's deposition, the plaintiff learned about the existence of the Joelynn

4

Family Preservation Trust.[4]  Defendant Jackson testified that he created this Trust, that he was a trustee, and that the three Trust beneficiaries are his sister, Judith Basile, and his two adult children, Jessica Jackson and Joseph Jackson.  Additionally, Defendant Jackson testified that the house that he resides in is owned by the Trust.

After Defendant Jackson's deposition, the plaintiff amended her complaint and named the Joelynn Family Preservation Trust as an additional defendant. The plaintiff's amended complaint alleged that Defendant Jackson was acting "as a Trustee and agent for . . . the Joelynn Family Preservation Trust" when he purchased the plastic pipe at the hardware store for the "sole purpose of benefitting [the Trust] by improving real estate owned by, and titled to the Trust."

On February 1, 2016, the plaintiff filed a motion for partial summary judgment "on the issue of liability."  Specifically, the plaintiff argued that she was entitled to summary judgment on the issue of Defendant Jackson's liability based on the following: 1) Defendant Jackson pulled into the path of Decedent Myer in the right lane of Route 50; 2) Decedent Myer had the right-of-way while traveling in the right lane and Defendant Jackson failed to yield to oncoming traffic; 3) Corporal Brewer's report

[4] It appears from Defendant Jackson's deposition that the trust was formed in 1993 "after the trial I had . . . in the divorce deal."  The Trust is a "voluntary Inter Vivos Trust with a corpus of assets consisting of certain real and/or personal property." The Trust provides that it "shall be domiciled in and shall be interpreted and construed under the laws of The State of West Virginia."

5

concluded that Decedent Myer had not committed any traffic violations, and cited Defendant Jackson for failing to yield the right-of-way at the intersection; 4) an expert witness, testifying on behalf of the plaintiff, testified that Defendant Jackson caused the accident by pulling onto Route 50 and failing to yield to Decedent Myer's motorcycle; that Decedent Myer reacted within 2.8 seconds when Defendant Jackson pulled onto the highway; and that Decedent Myer "was alert and attentive and that he did . . . respond to the movement of the truck out into the intersection;" and 5) Defendant Jackson did not offer any expert testimony to rebut the plaintiff's expert's conclusion that Defendant Jackson's act of negligently pulling onto the highway and failing to yield to oncoming traffic caused the accident.

Defendant Jackson opposed this motion, arguing that the jury should be allowed to consider Decedent Myer's comparative fault. In support of this argument, Defendant Jackson argued that the motorcycle's skid marks started in the middle of the right lane and proceeded toward the "lane-dividing lines." However, the skid marks remained in the motorcycle's lane of travel. Essentially, Defendant Jackson argued that because the skid marks demonstrated that Decedent Myer's motorcycle traveled from the middle of the right lane toward the left edge of the right lane, the jury should decide "whether [Decedent] Myer acted as a reasonably prudent person . . . by swerving left instead of right and possibly avoiding the collision."

The circuit court granted the plaintiff's motion for summary judgment on liability. The circuit court's detailed order explains:

6

It is undisputed that [Decedent] Myer had the right-of-way while traveling on U.S. Route 50 and had the right to operate his vehicle in the entirety of his lane of travel; and, that Defendant Robert Paul Jackson had the duty to yield to oncoming traffic while he was stopped on Ritchie County Industrial Park Road, waiting to cross the eastbound lanes of U.S. Route 50.

The physical evidence, the results of the crash investigation by West Virginia State Police . . . and the sworn deposition testimony of Plaintiff's expert witness crash re-constructionist . . . who is the only crash expert witness identified by the parties—conclude that [Decedent Myer] was lawfully traveling at or below the posted speed limit in the right hand, eastbound lane of U.S. Route[.]

The undisputed physical and sworn deposition testimony . . . showed Defendant Jackson pulled across both eastbound lanes of U.S. Route 50 . . . in the face of oncoming traffic in a futile effort to safely reach the westbound lanes of the four-lane highway. . . .

Defendant Jackson breached his duty to yield the right-of-way to the oncoming motorist [Decedent] Myer and caused Mr. Myer to crash his motorcycle[.] . . .

Defendant Jackson has produced no expert witness to offer testimony and opinion which would contradict the findings and opinions of Plaintiff's expert crash reconstructionist[.] . . . In this regard, expert testimony is required because the subject of inquiry is one involving special skills or training not common to the ordinary person.

In a separate order, the circuit court denied a motion for summary judgment filed by Defendant Jackson regarding the Trust's liability. Defendant Jackson argued that while he "could be held personally liable for the damages resulting from the collision," the plaintiff did not present any evidence that Defendant Jackson acted with the "sanction of the Trust beneficiaries and under the Trust beneficiaries' supervision and control at the

7

time of the accident." Therefore, he argued the Trust could not be held liable. The circuit court denied this motion, ruling:

> There exists a genuine issue of material fact, in that the jury may find that on June 7, 2014, [Defendant] Jackson was acting on behalf of the Joelynn Family Trust when he traveled to Ace Hardware to purchase a pipe for a French Drain, which was to be installed at property which was owned by the Joelynn Family Trust.

On May 11, 2016, a jury trial began on the issue of damages and on the Trust's liability. At the close of the plaintiff's case, counsel for Defendant Jackson moved for a directed verdict regarding the Trust's liability. The circuit court denied this motion, stating that the Trust beneficiaries were "around some while this work was being performed [on Defendant Jackson's residence] and they had been in the loop" on matters regarding Trust property. The circuit court therefore ruled that the issue of the Trust's liability should be decided by the jury.

The jury returned a verdict in favor of the plaintiff in the amount of $543,202.17.[5] The jury was also asked: "Do you find that Robert Paul Jackson was

---

[5] The jury's damage award was as follows:

> Lost wages and fringe benefits: $32,000.00; Funeral Expenses: $9,384.25; Headstone: $1,817.92; Sorrow, Mental Anguish and solace of Harry Myer Jr.'s Family, including society companionship, comfort, guidance, kindly offices, and advice: $300,000.00; Loss of services, protection, care and assistance provided by Harry Edward Myer, Jr.: $200,000.00.

acting as an agent of the Joelynn Family Preservation Trust when he killed Harry Edward Myer, Jr.?" The jury answered this question in the affirmative.

Defendant Jackson filed post-trial motions requesting that the circuit court reverse its summary judgment ruling on Defendant Jackson's liability, enter judgment as a matter of law that the Trust was not liable for Defendant Jackson's action, or, in the alternative, order a new trial on the Trust's liability based upon the court's refusal to properly instruct the jury regarding a trustee's liability. The circuit court denied these motions by order entered on July 6, 2016. Defendant Jackson subsequently filed the instant appeal.

**II.**
**STANDARD OF REVIEW**

This case involves assignments of error related to the circuit court's rulings on three diverse issues to which different standards of review apply. The standards of review specific to the issues raised will be discussed in the Analysis section of this Opinion.

**III.**
**ANALYSIS**

The defendants assert that the circuit court erred by: 1) granting summary judgment to the plaintiff on the issue of Defendant Jackson's liability; 2) denying his post-trial motion for judgment notwithstanding the verdict on the issue of the Trust's

9

liability; and 3) incorrectly awarding prejudgment interest on an award for future lost wages.

## A. Summary Judgment on Liability

The first issue we address is whether the circuit court erred by granting the plaintiff's motion for summary judgment on Defendant Jackson's liability for causing the accident. Defendant Jackson argues that the jury should have been allowed to consider Decedent Myer's comparative fault. By contrast, the plaintiff argues that the circuit court correctly determined that she was entitled to summary judgment on the issue of liability. The plaintiff asserts that there was no evidence demonstrating Decedent Myer's comparative fault.

Our review of this issue begins with the applicable standard of review. We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We have also stated that "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). As this Court noted in *Painter*, "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence,' and must produce evidence sufficient

10

for a reasonable jury to find in a nonmoving party's favor." 192 W.Va. at 192-93, 451 S.E.2d at 758-59 (internal citation omitted).

In addition to the foregoing, this Court has provided clear direction on whether a comparative fault or negligence claim[6] should be decided by a jury or by the court. In Syllabus Point 2 of *Reagar v. Anderson*, 179 W.Va. 691, 371 S.E.2d 619 (1988), this Court held, in relevant part, "[i]n a comparative negligence or causation action the issue of apportionment of negligence or causation . . . where the facts are undisputed and reasonable minds can draw but one inference from them should . . . be determined as a matter of law."[7]

---

[6] This Court modified our contributory negligence law in *State v. Bradley*, 163 W.Va. 332, 256 S.E.2d 879 (1979), adopting the doctrine of comparative fault or comparative negligence. Under Syllabus Point 3 of *Bradley*, "[a] party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident." However, W.Va. Code §§ 55–7–13a through -13d [2015] modified West Virginia's comparative fault law to bar recovery only where the plaintiff's fault is greater than the combined fault of all other persons responsible for the damages. The foregoing statutes apply to all causes of action arising or accruing on or after May 25, 2015. *See* W.Va. Code § 55-7-13d(h) [2016]. The instant matter involves an automobile accident that occurred in June of 2014. Thus, the comparative fault law announced in *Bradley* applies to this case.

[7] *See also* Syllabus Point 4, *Hollen v. Linger*, 151 W.Va. 255, 151 S.E.2d 330 (1966) ("When the material facts are undisputed and only one inference may be drawn from them by reasonable minds the questions of negligence and contributory negligence are questions of law for the court."); Syllabus Point 1 of *Graham v. Crist*, 146 W.Va. 156, 118 S.E.2d 640 (1961) ("When the evidence is conflicting, or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them, the questions of negligence and contributory negligence are for the jury."); Syllabus Point 3,

(continued . . .)

In the instant case, the facts regarding the collision are undisputed. First, Defendant Jackson failed to yield the right-of-way to oncoming traffic when he attempted to drive his truck across the eastbound lanes of Route 50 and make a left turn into the westbound lanes. This Court has held that "[t]he making of a left turn . . . *across oncoming traffic* is one of the most dangerous movements a vehicle can make on the highway, and the driver of a vehicle making such movement must ascertain if it can be done with reasonable safety." Syllabus Point 1, in part, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981) (emphasis added).

Next, as noted in the police report, Defendant Jackson's failure to yield was a violation of W.Va. Code § 17C-9-1. This Court has held that a "[v]iolation of a statute is *prima facie* evidence of negligence." Syllabus Point1, in part, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990). It is undisputed that Corporal Brewer concluded in his police report that Decedent Myer did not commit any traffic violations relating to the collision.

Importantly, there was no evidence indicating that the plaintiff was negligent in any manner. The only expert who testified in this matter stated that Defendant Jackson caused the accident by pulling onto Route 50 and failing to yield to

*Graham* ("When the material facts are undisputed and only one inference may be drawn from them by reasonable minds the questions of negligence and contributory negligence are questions of law for the court.").

12

Decedent Myer. This expert, Daniel Aerni, testified on behalf of the plaintiff and stated that Decedent Myer was traveling between 55 to 64 mph, which was below the posted speed limit, "at the start of the 89-foot skid[.]" Regarding the amount of time it took Decedent Myer to react to Defendant Jackson pulling onto Route 50, the expert testified:

> I calculated that the truck driven by Mr. Jackson accelerated over a distance of about 52 feet and that it took him about 4.2 seconds to do so. . . . Furthermore, I calculated that the skid by Mr. Myer took about 1.34 seconds, as I recall, the difference being about 2.8 seconds. That is the amount of time that I obtain between the very start of the acceleration by Mr. Jackson and the application of the brakes by Mr. Myer.

The expert testified that Decedent Myer's motorcycle was within 320 feet of the impact location when Defendant Jackson began accelerating onto Route 50 and stated "[s]o I believe the motorcycle was in the right eastbound lane in front of the semi and that Mr. Jackson simply somehow failed to detect the motorcycle." Additionally, the expert testified that "the skid gives me reason to believe that Mr. Myer was alert and attentive and that he did . . . respond to the movement of [Defendant Jackson's] truck out into the intersection." Finally, the expert testified that the point of impact occurred near the hash-mark line separating the two lanes of Route 50, "just a tiny bit on the slow lane side."

Defendant Jackson asserts, however, that the jury should have been allowed to consider Decedent Myer's comparative fault because the skid mark evidence

13

demonstrates that his motorcycle remained in the right lane but traveled from the middle of the lane toward the left edge of the right lane.[8] Therefore, according to Defendant Jackson, the jury should decide "whether [Decedent] Myer acted as a reasonably prudent person . . . by swerving left instead of right and possibly avoiding the collision."

After review, we find that the material facts are undisputed and that "reasonable minds can draw but one inference from them." *Reagar*, Syllabus Point 2. The undisputed material facts demonstrate that Decedent Myer was traveling below the speed limit in the right lane of Route 50 when Defendant Jackson failed to yield to oncoming traffic in violation of W.Va. Code § 17C-9-1. Confronted with the sudden emergency created by Defendant Jackson, Decedent Myer applied his brakes within 2.8 seconds of Defendant Jackson entering the highway. In Syllabus Point 3 of *Poe v. Pittman*, 150 W.Va. 179, 144 S.E.2d 671 (1965), this Court held:

> A person in a sudden emergency, not created in whole or in part by his own negligence, who acts according to his best judgment or who, because of insufficient time for reflection, fails to act in the most judicious manner, is not

---

[8] In Syllabus Point 2, in relevant part, of *Addair*, this Court held:

> Contributory negligence on the part of the plaintiff is an affirmative defense. There is a presumption of ordinary care in favor of the plaintiff, and where the defendant relies upon contributory negligence, the burden of proof rests upon the defendant to show such negligence unless it is disclosed by the plaintiff's evidence or may be fairly inferred by all of the evidence and circumstances surrounding the case.

14

guilty of negligence if he exercises the degree of care which would be exercised by a reasonably prudent person in like circumstances.

We reiterate that Decedent Myer applied his brakes within 2.8 seconds of Defendant Jackson creating the sudden emergency by failing to yield to oncoming traffic and pulling onto Route 50. After applying his brakes, the skid mark evidence reveals that Decedent Myer's motorcycle skidded for approximately 89 feet, starting in the center of the right lane and colliding with Defendant Jackson's truck near the left edge of the right lane. There is no evidence that Decedent Myer left the right lane at any time during the course of this accident. Under these facts, we find that Decedent Myer acted as a reasonably prudent person by applying his brakes within 2.8 seconds and by staying in the right lane throughout the sudden emergency caused by Defendant Jackson.

We also emphasize that the only expert to testify in this matter stated that Defendant Jackson was at fault for causing the accident. The expert did not find any fault with the actions Decedent Myer's took when he was confronted with the sudden emergency caused by Defendant Jackson. In fact, the expert testified that Decedent Myer's actions demonstrated that he was "alert and attentive" when confronted with the sudden emergency caused by Defendant Jackson's failure to yield to oncoming traffic.

Finally, we note that the only evidence cited by Defendant Jackson in support of his position is the testimony of the plaintiff's expert and of Corporal Brewer. However, the plaintiff's expert testified that Defendant Jackson caused the accident and did not offer any testimony that Decedent Myer was negligent in

15

any manner.  Likewise, Corporal Brewer's investigation concluded that Defendant Jackson failed to yield to oncoming traffic in violation of W.Va. Code § 17C-9-1, and that Decedent Myer did not commit any traffic violations.  Therefore, we find Defendant Jackson's argument fails.

Based on all of the foregoing, we find no error with the circuit court's ruling granting summary judgment to the plaintiff on the issue of Defendant Jackson's liability.

## B. Trust Issue

The next assignment of error is whether the circuit court erred when it denied Defendant Jackson's post-trial motion for judgment as a matter of law on the issue of the Trust's liability for Defendant Jackson's tort.

Our standard of review for a circuit court's denial of a motion for judgment as a matter of law was set forth in Syllabus Points 1 and 2 of *Fredeking*, 224 W.Va. 1, 680 S.E.2d 16:

> The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*.

> When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have

16

reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.[9]

This issue requires us to examine our law on whether, and under what circumstances, a trust may be held liable for a tort committed by a trustee. Our review begins with a review of our common law on this issue.[10]

---

[9] We are also guided by Syllabus Point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), in which this Court held:

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

[10] In Syllabus Point 2 of *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1988), the Court provided the following general description of a "trust":

> A "trust" is a legal relation between two or more persons by virtue of which one is bound to hold property to which he has the legal title, for the use or benefit of the other or others who have an equitable title or interest. It is a right, enforceable in equity, to the beneficial enjoyment of property, real or personal, of which the legal title is in another. The person so holding the legal title or interest is called the "trustee," and the one having the equitable interest and entitled to the benefit is the beneficiary or "cestui que trust." The person creating the trust is called the "trustor" or "settlor." An essential feature of trusts is the division of the title to property, the vesting of the legal title in the trustee and

(continued . . .)

17

This Court set forth our common law rule addressing the liability of a trust for a tort committed by a trustee in *Massey v. Payne*, 109 W.Va. 529, 155 S.E. 658 (1930), and *Marion v. Chandler*, 139 W.Va. 596, 81 S.E.2d 89 (1954). In Syllabus Point 1 of *Massey*, decided by this Court in 1930, we held:

> A trust estate is ordinarily not liable for torts committed by the trustee, *when he is entirely free from the control of the beneficiary.* And such a trustee is personally liable to third persons for his torts in failing to keep the trust property in repair, irrespective of his right to reimbursement.

(Emphasis added.)

Twenty-four years later, this Court had the opportunity to revisit this issue in *Marion v. Chandler*. The Court in *Marion*, after describing a number of approaches other jurisdictions had taken, reaffirmed the rule announced by *Massey*, stating, "[t]his Court is committed to the general rule . . . A trust estate is ordinarily not liable for torts committed by the trustee, when he is entirely free from the control of the beneficiary." 139 W.Va. at 601-02, 81 S.E.2d at 93 (internal citation and quotation omitted).

In 2011, our Legislature enacted the "West Virginia Uniform Trust Code." *See* W.Va. Code § 44D-1-101 *et seq.* [2011]. By way of background, the model Uniform Trust Code was promulgated in 2000 by "the National Conference of Commissioners on Uniform State Laws [which] replaced the Uniform Trust Act with the Uniform Trust

---

of the equitable title or beneficial interest in the cestui que trust.

18

Code." Bogert's *Trusts and Trustees*, § 732 (2016). After an extensive five-year study of the model Uniform Trust Code by a probate committee of West Virginia lawyers, our Legislature adopted the West Virginia Uniform Trust Code in 2011.[11] It "applies to express trusts . . . and trusts created pursuant to a statute, judgment, or decree that requires the trust to be administered in the manner of an express trust." W.Va. Code § 44D-1-102 [2011].

We now address the relevant provisions of the West Virginia Uniform Trust Code to the instant matter. West Virginia Code § 44D-10-1010(b) [2011] provides that a trustee is personally liable for torts committed in the course of administering a trust if the trustee is personally at fault: "A trustee is personally liable for torts committed in the course of administering a trust, or for obligations arising from ownership or control of

---

[11] A description of this study is as follows:

> The most significant undertaking of members of the Probate Committee was their advocacy for the adoption of the Uniform Trust Code in West Virginia. This important piece of legislation was analyzed and studied by the Probate Committee for five years before members of the Probate Committee presented their recommended version of the West Virginia Uniform Trust Code to the Legislature. This 120-page bill was enacted by the Legislature in 2010 as new Chapter 44D of the West Virginia Code.

John F. Allevato, *Probate Committee Serves West Virginia in a Number of Facets*, 2016-March W.Va. Law. 18 (2016).

trust property, including liability for violation of environmental law, only if the trustee is personally at fault."

The West Virginia Uniform Trust Code also provides that a trust may be liable for a tort committed by a trustee if the tort is "committed in the course of administering a trust[.]" West Virginia Code § 44D-10-1010(c) [2011] provides, "[a] claim based . . . on a tort committed in the course of administering a trust, may be asserted in a judicial proceeding against the trustee in the trustee's fiduciary capacity, whether or not the trustee is personally liable for the claim."

By way of background on the foregoing statute, we note that W.Va. Code § 44D-10-1010(c) contains the same language set forth in § 1010(c) of the model Uniform Trust Code. The comment section to § 1010 of the model Uniform Trust Code expressly provides that "[s]ubsection (c) alters the common law rule that a trustee could not be sued in a representative capacity if the trust estate was not liable." Further, we note that § 1010(c) of the model Uniform Trust Code and W.Va. Code § 44D-10-1010(c) are consistent with the Restatement (Third) of Trusts § 105 (2012), which provides, "[a] third party may assert a claim against a trust for a liability incurred in trust administration by proceeding against the trustee in the trustee's representative capacity, whether or not the trustee is personally liable."

Finally, we note that the approach set forth in the model Uniform Trust Code, W.Va. Code § 44D-10-1010(c), and the Restatement (Third) of Trusts is followed by a majority of jurisdictions:

20

As previously indicated, there has been a statutory trend towards representative rather than individual liability of a trustee. . . . [A] majority of United States jurisdictions have adopted provisions of the Uniform Trust Code or the Uniform Probate Code or adopted similar legislation that exempt a trustee from personal liability for torts committed during the administration of a trust unless the trustee is personally at fault. These statutes give tort victims a right to satisfaction from the trust assets that may be asserted in an action against the trustee in his or her fiduciary capacity.

Bogert's *Trusts and Trustees*, § 735 (2016).

While our Legislature adopted this majority rule by enacting W.Va. Code § 44D-10-1010(c), we note that W.Va. Code § 44D-10-1010(c) conflicts with our common law rule on this issue. Our common law rule was set forth in two cases decided in 1930 and 1954, *Massey* and *Marion*, in which this Court held that a trust is ordinarily not liable for torts committed by the trustee, when the trustee was free from the control of a trust beneficiary. Thus, under our common law rule, the test to determine the trust's liability is whether the trustee was acting under the control of a trust beneficiary at the time the tort occurred.

Under W.Va. Code § 44D-10-1010(c), the test is no longer dependent on the degree of control a beneficiary exercises over the trustee at the time the tort occurred; rather, the test is whether the trustee committed the tort "in the course of administering a trust." We recognize that "[o]ne of the axioms of statutory construction is that a statute will be read in context with the common law unless it clearly appears from the statute that the purpose of the statute was to change the common law." Syllabus Point 2, *Smith v. West Virginia State Bd. of Educ.*, 170 W.Va. 593, 295 S.E.2d 680 (1982). In the instant

21

case, we find that the purpose of W.Va. Code § 44D-10-1010(c) was clearly to change the common law rule on this issue, *i.e.*, whether a claim based on a tort committed by a trustee may be asserted against the trust.[12]

Based on the foregoing, we hold that W.Va. Code § 44D-10-1010(c), contained in the West Virginia Uniform Trust Act, provides that a claim based on a tort committed by a trustee in the course of administering a trust may be asserted in a judicial proceeding against the trustee in the trustee's fiduciary capacity, whether or not the trustee is personally liable for the claim. To the extent this Court's prior rulings in *Massey v. Payne*, 109 W.Va. 529, 155 S.E. 658 (1930), and *Marion v. Chandler*, 139 W.Va. 596, 81 S.E.2d 89 (1954), conflict with W.Va. Code §§ 44D-10-1010(b) and (c), those cases are overruled.

Applying this holding to the instant case, we must determine whether Defendant Jackson was "in the course of administering" the Joelynn Family Preservation Trust at the time the automobile accident occurred.

Pursuant to W.Va. Code § 44D-8-801 [2011], "the trustee shall administer the trust and invest the trust assets in good faith, in accordance with its terms and

---

[12] We note that the West Virginia Uniform Trust Code also provides that "[t]he common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or another statute of this state." W.Va. Code § 44D-1-106 [2011]. While our common law generally supplements the West Virginia Uniform Trust Code, it is clear that W.Va. Code § 44D-10-1010(c) modified our common law rule on a trust's liability for a trustee's tort.

22

purposes and the interests of the beneficiaries, and in accordance with this chapter." A number of duties, responsibilities and obligations may be required of a trustee in the course of "administering" a trust. These include: 1) collecting trust property; 2) managing, acquiring, insuring, or selling trust property; 3) managing trust money; 4) managing trust stocks or other securities; 5) managing trust business organizations; 6) paying taxes and other expenses incurred in the course of administering the trust; 7) signing and delivering contracts and other instruments relating to trust business; and 8) terminating the trust. *See* Uniform Trust Code § 816.

Moreover, one law review article described the type of third parties who typically interact with a trustee and who would typically assert a claim against a trust for a tort that occurred in the course of a trustee administering the trust:

> Third persons, in trust law parlance, are persons other than trustees and beneficiaries. *These are the persons who purchase property from the trust, sell property or provide services to the trust, or otherwise engage in transactions with the trustee. . . .*
>
> The provisions of the [Uniform Trust Code] addressing trustee relations with third persons are built on the premise that third persons should approach transactions with trustees the same way they approach any other commercial deal. The theory is that trust beneficiaries are helped more by the free flow of commerce than they were by the largely ineffective protective features of former law.

David M. English, *The Uniform Trust Code (2000): Significant Provisions and Policy Issues*, 67 Mo. L. Rev. 143, 209 (2002) (emphasis added).

Returning to the instant case, the plaintiff asserts that because Defendant Jackson bought pipe for his residence prior to the accident, the Trust is liable for his tort. We disagree. Under the unique facts of this case, we conclude that Defendant Jackson was not "in the course of administering" the Trust at the time the automobile accident occurred. On the morning the accident occurred, Defendant Jackson drove into town and ate breakfast. He then stopped at a hardware store to buy plastic pipe. While the pipe was going to be used at his residence that is owned by the Trust, Defendant Jackson was not directed to buy the pipe by any of the Trust beneficiaries,[13] nor was he required to buy the pipe by the Trust document. Further, there was no evidence that the pipe was purchased with Trust money. Also, the truck Defendant Jackson was driving at the time the accident occurred was not owned by the Trust. The truck was owned by Defendant Jackson's oil company, Venture Petroleum. This company was not named as a defendant in this case.

---

[13] While a beneficiary's control over the trustee is not the test for determining whether a trust is liable for a trustee's tort under W.Va. Code § 44D-10-1010(c), we find that a beneficiary's control over the trustee may be relevant when considering whether a trustee was "in the course of administering a Trust" at the time the tort occurred. As a general matter, Defendant Jackson stated that when the property needs to be repaired, "I mention I'm going to need to do it to the other trustees [beneficiaries], but I'm the one that makes the decision on it." Further, Defendant Jackson testified about decisions regarding the property, "I live there and do it and it was my property to start with." He was then asked, "Ultimately the decision rests on you?" Defendant Jackson replied, "Yes."

Additionally, Decedent Myer did not conduct any business, provide any services, engage in any transactions, or have any dealings whatsoever with the Trust. The tort in this matter occurred because Defendant Jackson committed a traffic violation— failure to yield to oncoming traffic. This traffic violation was not connected to a duty, obligation, contract, or business transaction Defendant Jackson was carrying out in furtherance of the Trust. Based on these undisputed facts, we conclude that the Trust cannot be held liable for Defendant Jackson's tort pursuant to W.Va. Code § 44D-10-1010(c) because he was not "in the course of administering" the Trust at the time the accident occurred.

We therefore reverse the circuit court's order denying the defendants' post-trial motion for judgment as a matter of law on the Trust issue.[14] On remand, the circuit court is directed to enter an order providing that the Trust is not liable for Defendant Jackson's tort and dismissing the Trust from this case.

## C. Prejudgment Interest

The final issue is whether the circuit court erred by awarding prejudgment interest on the $32,000.00 damage award for "lost wages and fringe benefits." Defendant

---

[14] Defendant Jackson also asserted that the circuit court erred by refusing to instruct the jury regarding a trustee's personal liability. Because we find that Defendant Jackson's motion for judgment notwithstanding the verdict on the Trust issue should be granted, the jury instruction assignment of error is moot.

Jackson argues that this award "is not a prejudgment loss or special damage under W.Va. Code § 56-6-31." Instead, Defendant Jackson argues that this award was for future lost wages and that prejudgment interest is not available for such an award. Conversely, the plaintiff argues that the $32,000.00 award for lost wages "was for special damages" and, as such, was proper under W.Va. Code § 56-6-31 [2006].

Our standard of review for an award of prejudgment interest was set forth in *Gribben, et al v. Kirk*, 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995), in which this Court provided:

> In reviewing a circuit court's award of prejudgment interest, we usually apply an abuse of discretion standard. *See generally Perdue v. Doolittle*, 186 W.Va. 681, 414 S.E.2d 442 (1992). Under the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances. However, when the award hinges, in part, on an interpretation of our decisional or statutory law, we review *de novo* that portion of the analysis.

West Virginia Code § 56-6-31(a) sets forth our law on prejudgment interest in tort actions. It provides, in relevant part:

> Except where it is otherwise provided by law, every judgment or decree for the payment of money, whether in an action sounding in tort, contract or otherwise, entered by any court of this state shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, *That if the judgment or decree, or any part thereof, is for special damages*, as defined below, or for liquidated damages, *the amount of special or liquidated damages shall bear interest* at the rate in effect for the calendar year in which the right to bring the same shall have accrued, as determined by the court and that established rate shall remain constant from that date until the date of the judgment or

26

decree, notwithstanding changes in the federal reserve district discount rate in effect in subsequent years prior to the date of the judgment or decree. *Special damages includes lost wages and income*, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court.

(Emphasis added.)

After review, we find that the circuit court did not err by awarding prejudgment interest on the lost wages award. First, there is no question that the jury awarded "lost wages" to the plaintiff and that "lost wages" are a special damage under W.Va. Code § 56-6-31(a). Next, as this Court explained in *Grove v. Myers*, 181 W.Va. 342, 382 S.E.2d 536 (1989), prejudgment interest shall be awarded on such damages from the date the cause of action accrued until the date judgment is rendered. In Syllabus Point 3 of *Grove*, in part, this Court held, "[u]nder W.Va. Code, 56-6-31, as amended, prejudgment interest is to be recovered on special or liquidated damages incurred by the time of the trial, whether or not the injured party has by then paid for the same."

The Court in *Grove* also stated in Syllabus Point 2, in part, that "prejudgment interest on special or liquidated damages is calculated from the date on which the cause of action accrued, which in a personal injury action is, ordinarily, when the injury is inflicted." Thus, according to this Court's ruling in *Grove*, prejudgment interest shall be awarded on special damages under W.Va. Code 56-6-31 from the date the cause of action accrued until the date judgment is rendered.

In the present case, both parties presented expert financial testimony during the trial. While the experts did not agree on the total value of Decedent Myer's future

27

earning capacity, they did agree that Decedent Myer was making $32,000.00 per year at the time of his death. Thus, it is clear that the jury awarded Decedent Myer the equivalent of one year of lost wages—$32,000.00.

Additionally, the cause of action accrued on the date the accident took place—June 7, 2014. The judgment was rendered on May 12, 2016. Therefore, the plaintiff was entitled to a prejudgment interest award on the lost wages award because the award was equivalent to one year of Decedent Myer's salary which he would have received between the date the cause of action accrued (2014) and the date the date judgment was rendered (2016).

Defendant Jackson argues that prejudgment interest is not available on an award for "future lost wages." In support of this argument, Defendant Jackson relies on Syllabus Point 15 of *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 418 S.E.2d 738 (1992), in which this Court held, "[f]uture wage loss, *accruing after the jury verdict*, is not a prejudgment loss or special damage under W.Va. Code, 56-6-31 (1981)." (Emphasis added). We find Defendant Jackson's reliance on *Pasquale* is misplaced.

In *Pasquale*, the plaintiff asserted a wrongful death claim against a utility company, and the jury awarded the plaintiff a substantial lost wages damage award. The circuit court awarded prejudgment interest on the entire lost wages award and the defendant appealed. On appeal, the defendant conceded "that it was proper to award prejudgment interest on the potential earnings from August 19, 1987 [the date the cause of action accrued], until trial," but contended that prejudgment interest should not have

28

been awarded on future earnings *after the verdict* was rendered. 187 W.Va. at 311, 418 S.E.2d at 757. The Court ruled:

> *the plaintiff was entitled to recover prejudgment interest on the decedent's lost wages from the date of his death until the date of the judgment on the jury verdict.* However, the trial court did not calculate prejudgment interest for this period only, but calculated interest on the entire future wage loss. Clearly, the future wage loss accruing after the jury verdict is not a prejudgment loss or "special damage" under W. Va. Code, 56-6-31.

(Emphasis added.)

In the present case, the $32,000.00 lost wages award was equivalent to one year of Decedent Myer's salary, which would have accrued between June 2014 (when the accident occurred) and the trial date. Thus, it was proper under W.Va. Code 56-6-31 for the circuit court to award prejudgment interest on this award.

## IV.
## CONCLUSION

Based on the foregoing, we affirm the circuit court's ruling granting summary judgment to the plaintiff on the issue of Defendant Jackson's liability. We reverse the circuit court's ruling denying Defendant Jackson's post-trial motion for judgment as a matter of law on the issue of the Trust's liability and remand the case to the circuit court for entry of an order granting Defendant Jackson's motion and dismissing the Trust from this case. Finally, we affirm the circuit court's award of prejudgment interest on the plaintiff's lost wages damage award.

29

Affirmed, in part; reversed, in part; and remanded with directions.